No. 91-403

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

---

STATE PERSONNEL DIVISION OF THE
DEPARTMENT OF ADMINISTRATION,
STATE OF MONTANA,

        Petitioner and Appellant,

  -vs-

BOARD OF PERSONNEL APPEALS, Division
of the Department of Labor and Industry
of the State of Montana; and COMMUNITY
CORRECTIONS SPECIALISTS II, Department
of Institutions,

        Respondents and Respondents.

FILED

DEC 16 1992

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

---

APPEAL FROM:  District Court of the First Judicial District,
             In and for the County of Lewis & Clark,
             The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          David L. Ohler argued, Legal Counsel, Dept. of
          Administration, State Personnel Division, Helena,
          Montana

      For Respondents:

          Melanie Symons argued, Legal Counsel, Dept. of Labor
          and Industry, Board of Personnel Appeals, Helena,
          Montana
          J. C. Weingartner argued, Attorney at Law, Community
          Corrections Specialists II, Helena, Montana

---

             Submitted:  January 8, 1992

              Decided:  December 16, 1992

Filed:

                             Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

The State Personnel Division (Division) of the Department of Administration appeals from a decision and order of the District Court of the First Judicial District, Lewis and Clark County. The District Court affirmed a final order of the co-respondent Board of Personnel Appeals (Board) which granted retroactive pay to the co-respondents Community Corrections Specialists II, employees of the Department of Institutions (employees). We reverse and remand.

The issue we address on appeal is whether the District Court erred in affirming the Board's order granting retroactive pay to the employees.

The employees initiated a classification appeal by filing a petition with the Board on April 24, 1987. They sought a classification review of their Community Corrections Specialist II (CCS II), grade 12, classification. The Board designated the classification appeal a group classification appeal pursuant to 24.26.513, ARM.

The Division submitted a Step III response to the group classification appeal on August 31, 1987. The response included the Division's findings that the employees' positions were properly classified as CCS II, grade 12. The Division also found that while the appeal investigation did not yield a more appropriate class for the employees, comparisons to other positions, including Community Corrections Specialist III (CCS III), grade 13, indicated a need for a series review; complicating the classification appeal was a

2

reassignment of some employees to the then newly-created Department of Family Services. The Division further found:

> The State Personnel Division shall conduct a review of the Community Corrections Specialist Series to determine whether 1) the reassignment of some [of the employees] to the Department of Family Services will affect their position classifications; 2) a grade level distinction exists between the [CCS II and CCS III] classes; and 3) the appropriate grade levels have been assigned to Community Corrections Specialists Series.

On September 15, 1987, the parties stipulated that, pending the series review, the employees' classification appeal would remain in full force and effect; the stipulation specifically preserved the established date of filing. The stipulation also waived the time requirement for appealing the Step III decision until the series review was completed.

The Division completed its series review on June 3, 1988. It developed a new classification for positions assigned adult case supervision under the Department of Institutions. All positions at grades 11 and 12 were reclassified to Probation and Parole Officer, grade 13. Positions assigned juvenile case loads, under the Department of Family Services, were reclassified as Family Services Specialists II, grade 13. The reclassification and resultant upgrade became effective on July 1, 1988. The Division determined that the employees were not entitled to retroactive pay because they were properly classified when they filed their classification appeal, based on the standards then in place.

On June 10, 1988, the employees advanced their classification appeal to Step IV of the grievance procedure. The parties stipulated to the issues to be presented to the hearing examiner at

3

a hearing which was held on January 13, 1989. The issues were whether the CCS III class specification was a better description of the employees' position duties than CCS II and whether the employees' position duties were more similar to those positions assigned to CCS III.

The hearing examiner issued his findings of fact, conclusions of law and recommended order on April 7, 1989. He found that the CCS III class was distinguished from the employees' class only by the addition of special assignments. However, he denied the employees' request to be reclassified on the grounds that they did not demonstrate that they performed the additional duties assigned to the higher class, that they were improperly classified, or that the Division failed to comply with the established methods or standards when considering their classification appeal.

The hearing examiner also found that the Division's investigation resulting from the employees' classification appeal indicated a need for a classification series review and that "[a]ny upgrade resultant from that series review must be retroactive." He concluded that the employees were aggrieved when their reclassification was not made retroactive. He recommended an order that those employees reclassified as a result of the series review be paid the difference between what they had been paid and what they would have been paid had the results of the series review been made retroactive to thirty days prior to the date of their classification appeal.

The Division filed exceptions to the findings of fact,

4

conclusions of law and recommended order. The Division asserted that because the hearing examiner found against the employees on the two issues stipulated to by the parties prior to the hearing, the hearing examiner's recommendation that the employees be awarded retroactive pay was improper. After oral argument, the Board remanded the case to the hearing examiner for further proceedings pursuant to the stipulations in effect at the time of the previous hearing, together with the issue of retroactive pay. The Board's order did not address the question of retroactivity other than setting the cause for rehearing.

Another hearing was set for September 26, 1989. At a prehearing conference on September 5, 1989, the parties agreed that the hearing examiner would not hear additional evidence on the two previously stipulated issues. The sole issue presented to the hearing examiner was whether there was "linkage" between the employees' classification appeal and the series review and, if so, whether that linkage provided a basis for retroactive pay.

The hearing examiner issued his second findings of fact, conclusions of law and recommended order on March 14, 1990. He reaffirmed his earlier findings on the original two issues and further found that there was linkage between the employees' classification appeal and the series review. He found that the Division recognized the need for a series review prior to the employees' classification appeal and, while the classification appeal may not have been the motivating factor for the series review, it was a factor which, together with others, accelerated

5

that review to correct a recognized need. The hearing examiner again recommended retroactive pay based on his conclusion that the linkage between the employees' classification appeal and the series review "[m]eans that the [employees] were aggrieved when their resultant reclassification and upgrade was not made retroactive to thirty (30) days prior to the date of their Wage and Classification Appeal."

The Division again filed exceptions to the findings of fact, conclusions of law and recommended order. The matter was argued to the Board on June 6, 1990. The Division argued that the hearing examiner's recommendation of retroactive pay was improper because the employees were not found to be aggrieved on the two original stipulated issues. It further argued that, because the employees were properly classified at the time they brought their appeal, any link between the employees' appeal and the Division's series review was not sufficient to provide a basis for retroactive pay. The Board adopted the hearing examiner's findings of fact, conclusions of law and recommended order on June 28, 1990. The Division's petition for rehearing was denied.

The Division filed a petition for judicial review of the Board's decision and order in the District Court on October 5, 1990. The court determined that the Board's decisions were substantially supported by the record. It further determined that the award of retroactive pay to the employees was proper and affirmed the Board's decision and order. This appeal followed.

Did the District Court err in affirming the Board's order

6

granting retroactive pay to the employees?

In reviewing an administrative agency's findings of fact, the standard of judicial review used is whether the findings are clearly erroneous in view of the reliable, probative and substantial evidence in the whole record. Section 2-4-704, MCA; Dept. of Revenue v. UPS, Inc. (Mont. 1992), 830 P.2d 1259, 49 St.Rep. 20. An agency's conclusions of law will be upheld if the agency's interpretation of the law is correct. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603.

The Division contends that the District Court erred in affirming the Board's order granting retroactive pay because the order was contrary to this Court's decision in Matter of the Classification Appeal of Warren C. Mead v. Board of Personnel Appeals (1988), 235 Mont. 208, 766 P.2d 1300. A review of Matter of Mead is necessary for resolution of the present case.

Matter of Mead involved a classification appeal by Highway Patrol Officers. Employees in the positions of Sergeant, Lieutenant and Captain initiated a grievance before the Board seeking to compel the Division to adopt new position descriptions, develop new class specifications and reclassify their respective positions. New position descriptions were submitted to, and adopted by, the Division. The Division then reclassified the positions. The new classification resulted in an assignment of the same grades to the officers. The officers appealed the assignment of grades to the Board. A hearing examiner found that the officers

7

were aggrieved and recommended that they be reclassified by raising their grade levels one pay grade. The Board amended the recommended order by requiring the Division to conduct a classification series review.

The Division conducted a series review and recommended that the officers retain the original grade assigned to their class. The Board rejected the recommendation and adopted the hearing examiner's original findings of fact, conclusions of law and recommended order. The district court reversed the Board's order on the basis that it violated § 2-18-203(2), MCA, which prohibits an appeal of the grade assigned to a class.

On appeal, the Board argued that under § 2-18-1012, MCA, and our decision in Hutchin v. State (1984), 213 Mont. 15, 688 P.2d 1257, it had authority to resolve any grievance even if resolution of the classification appeal resulted in reallocation of the grade assigned to a class. Section 2-18-1012, MCA, provides in part:

> If upon the preponderance of the evidence taken at the hearing the board is of the opinion that the employee is aggrieved, it may issue an order to the appropriate agency or agencies of state government requiring such action as will resolve the employee's grievance.

Hutchin involved a wrongful discharge grievance--rather than a classification appeal under § 2-18-203--by a former employee of the Department of Fish, Wildlife and Parks. Under § 87-1-205, MCA, grievances against that Department are governed by §§ 2-18-1011 through 2-18-1013, MCA. The Board found the employee aggrieved, ordered reinstatement and denied an award of back pay. In affirming the Board's decision, we stated that "[i]t is apparent

8

from section 2-18-1012, MCA, that if the Board of Personnel Appeals determines that the employee is aggrieved, it has full discretion to resolve the employee's grievance." Hutchin, 213 Mont. at 19, 688 P.2d at 1260.

We rejected the Board's contention in Matter of Mead that, based on our holding in Hutchin, it had the authority to resolve any grievance. We affirmed the district court's reversal of the Board's decision, stating:

> Contrary to [the Board's] contention, the District Court found that the Board is limited in a classification appeal by § 2-18-203(2), MCA, to determining whether a position has been properly classified by the Division. The court held that the Board was without authority to create new classifications or to assign grades to classifications, and it distinguished Hutchin by stating:

> "Hutchin involved the discharge of a state employee for personal use of state owned property. In Hutchin the board directed that the discharged employee 'be reinstated as of the date of this final order to the position he held with the department' at the time of his termination. That is the type of remedy that is uniquely within the discretion of the board. However, the board's order here usurps a function that has been delegated exclusively to the division."

> We agree with the District Court's holding that the board is limited to determining whether a position is properly classified. If a position is improperly classified, the Board may then order the Division to reclassify the position in accordance with its existing policy.

Matter of Mead, 235 Mont. at 215-16, 766 P.2d at 1304-05.

Thus, under § 2-18-203(2), MCA, and Matter of Mead, the Board in a classification appeal is limited to determining whether a position is properly classified. If the Board determines that the position is improperly classified, and the employee is, therefore, aggrieved, the Board can resolve the grievance under § 2-18-1012,

9

MCA, by ordering the Division to reclassify the employee's position and, as appropriate, ordering other remedies such as retroactive pay. In contrast, because no classification appeal was involved in Hutchin, the Board was not limited by § 2-18-203, MCA, and was free to fashion an appropriate remedy under § 2-18-1012, MCA, upon finding that an employee was aggrieved.

We conclude that, under the circumstances presented in the present case, the Board exceeded its legal authority when it granted retroactive pay to the employees. Prior to the first hearing before the hearing examiner, the parties stipulated that the issues were whether the employees were improperly classified as CCS II and whether they should have been classified as CCS III. The employees were not found to be aggrieved on either issue. The hearing examiner, and ultimately the Board, found that the employees were properly classified as CCS II based on the class specifications that were in place at the time the employees brought their classification appeal. These findings remained unchanged throughout the subsequent history of the case.

Even though the Board found that the employees were properly classified at the time they brought their classification appeal, it awarded the employees the increase in pay which resulted from their reclassification, retroactive to thirty days before they brought their appeal. This grant of retroactive pay was based on a finding of "linkage" between the employees' classification appeal and the Division's series review. While linkage between the classification appeal and the series review existed, we conclude that that linkage

10

was not legally sufficient to provide a basis for retroactive pay. Under § 2-18-203, MCA, and Matter of Mead, a determination by the Board that the employees were improperly classified was a prerequisite to granting a remedy to the employees. Having found the employees to be properly classified, the Board exceeded its statutory authority in granting retroactive pay.

In addition, because the employees were found to be properly classified as CCS II, grade 12, at the time they brought their appeal, the effect of the award of retroactive pay was to upgrade the employees' positions to a higher pay grade during the very time period that they were found to be properly classified. As such, the Board's order was tantamount to an assignment of a new grade to the employees' class in violation of § 2-18-203(2), MCA. Matter of Mead, 235 Mont. at 217-18, 766 P.2d at 1306. Based on the foregoing, it is clear that the Board incorrectly concluded that the employees were entitled to retroactive pay and exceeded its authority in granting such pay. Accordingly, we hold that the District Court erred in affirming the Board's order.

The Division raises additional arguments in support of its position that the District Court erred in affirming the Board's order granting retroactive pay to the employees. In light of our holding in this case, these arguments need not be addressed.

Reversed and remanded for proceedings consistent with this opinion.

_____
Justice

11

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

12

Justice Terry N. Trieweiler dissenting.

I dissent from the majority opinion.

The majority is correct that pursuant to our decision in *Matter of Mead* (1988), 235 Mont. 208, 766 P.2d 1300, the Board of Personnel Appeals cannot review and correct the grade assigned to a particular class. However, the majority opinion is incorrect when it concludes that our decision in *Mead* and § 2-18-203, MCA, requires a determination by the Board that employees were improperly classified before retroactive pay can be awarded. Our decision in *Mead* did not deal with the circumstances under which retroactive pay can be awarded, and there is nothing in § 2-18-203, MCA, which specifically links an award of retroactive pay to the Board's decision on the issue of classification.

Furthermore, I disagree that the employees were found to be properly classified at the time they brought their appeal. The State Personnel Division's investigation found that based upon the classes then available, Community Corrections Specialist II, Grade 12, was as good as any. However, the Department went on to acknowledge that its investigation indicated that a complete review of the classifications was necessary. That review resulted in the employees' reclassification. It was in that reclassified posture that this case came before the Board. The Board simply determined whether the Department's reclassification of the employees was a result of their appeal. No one has challenged the Board's finding

13

that there was in fact linkage between the appeal and the reclassification by the Department.

The facts in this case are not similar to the facts in *Mead.* In that case, the hearing examiner for the Board of Personnel Appeals recommended raising the employees' grade level by one pay grade. The Board issued findings and conclusions adopting that recommendation and we held that the Board was without authority to entertain an appeal of a pay grade.

In this case, the Board did not issue an order changing the employees' pay grade. No action of the Board resulted in a change in the employees' pay grade. The employees appealed their classifications to the State Personnel Division. As a result of that appeal, the Division concluded that the classifications in question should be reviewed. As a result of that review, the employees were reclassified by the Department and assigned a different grade.

All the Board did in this case was determine that based upon the employees' reclassification, they were entitled to retroactive pay for 30 days prior to the date their appeal was filed. This is the exact relief authorized by § 2-18-203(3), MCA. The majority opinion has placed qualifications on the award that are not found in the statute.

Our specific holding in *Mead* was that the Board of Personnel Appeals could not create classifications, nor assign grades within classifications. In this case, the Board's decision to award

14

retroactive pay was not based on its creation of any new classification. Nor was it based on the Board's assignment of any new grade to the employees. It was based on the Board's determination that the Division's review of the employees' classifications, and the Department's subsequent reclassification of the employees, was linked to the employees' original classification appeal to the Division.

On appeal, the Division argues, and the majority concludes, that the only issue before the Board was whether the employees should have been classified CCS III, rather than CCS II. The majority concludes that since the employees did not prevail on this issue, they were not aggrieved. However, limiting the issue presented to the Board in that manner is incorrect. At the second hearing before the Board's hearing examiner, the parties stipulated that the issue to be decided by the hearing examiner would be:

> Whether there is linkage between the wage and classification appeal of the Community Corrections Specialist II class and the class review of the Community Corrections Specialist series, and if so, does that linkage provide a basis for awarding retroactive pay.

After considering the evidence, the hearing examiner found that there was linkage. There was substantial evidence to support that finding on appeal, and no one contends that it was clearly erroneous.

Therefore, I conclude that it was not the Board which changed the employees' grade. That grade was changed by the Department in response to the employees' appeal. The Division, however, refused to award the retroactive pay to which the employees were entitled,

15

based upon that reclassification.  Therefore, the Board was within its authority when it considered the issue of retroactive pay on appeal.

For these reasons, I would affirm the decision of the District Court.

_____
Justice

Justice William E. Hunt, Sr., concurs in the foregoing dissent of Justice Trieweiler.

_____
Justice

16