No. 00-344

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 30

ORLAN AND TRINA STROM,

Plaintiffs and Respondents,

v.

ROBERT LOGAN AND ELIZABETH LOGAN,

Defendants and Appellants.

APPEAL FROM: District Court of the First Judicial District,

In and for the County of Lewis and Clark,

Honorable Jeffrey M. Sherlock, Judge Presiding

COUNSEL OF RECORD:

For Appellants:

Thomas F. Dowling, Dowling Law Firm, Helena, Montana

For Respondents:

Linda M. Deola, Reynolds, Motl & Sherwood, Helena, Montana

Submitted on Briefs: September 21, 2000
Decided: February 15, 2001

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Orlan and Trina Strom (Stroms) purchased a house from Robert and Elizabeth Logan (Logans) in Helena, Montana. The Stroms subsequently filed suit against the Logans alleging that the Logans had misrepresented that fire damage from a 1978 fire had been substantially repaired. The District Court, First Judicial District, issued judgment for the Stroms in the amount of $42,700. The Logans appeal from that judgment. We affirm the judgment.

¶2The Logans raise the following issues on appeal:

¶3 1. Were the Stroms' claims barred by the three-year statute of limitations?

¶4 2. Did the District Court abuse its discretion in refusing to dismiss Elizabeth Logan as a party defendant?

¶5 3. Did the District Court err in finding that the Logans had no reasonable grounds to believe their representations were true?

¶6 4. Did the District Court err in failing to consider the Stroms' contributory negligence?

¶7 5. Did the District Court abuse its discretion by awarding prejudgment interest?

¶8 6. Did the District Court abuse its discretion by denying the Logans' motion for summary judgment?

## Factual Background

¶9 On October 17, 1994, the Stroms agreed to buy a Helena residence from the Logans. Robert Logan was a licensed real estate broker. The Stroms were purchasing their first house.

¶10 At the time of the purchase, Robert Logan orally represented to the Stroms that a fire had taken place in 1978 and that all damage had been repaired. Shortly after signing the Buy/Sell Agreement, the parties entered into a disclosure statement which indicated that there was a structural fire in the house and that the damage had been substantially repaired. The agreement also indicated that the property was subject to major fire damage. It further provided that, "the property is sold as is."

¶11 Due to financial difficulties, the Stroms were unable to purchase the property as planned. On November 29, 1994, the parties entered into a lease and option to purchase. That document indicates that the Logans had not made any representations concerning the property and that the Stroms entered into the agreement in reliance upon their own independent inspection. Although the Stroms took possession of the property in November 1994, title was not transferred until December 1995.

¶12 Due to a hail storm in June 1997, the Stroms had to have the roof repaired. The roof repair crew discovered that the sheeting underneath the roof and trusses underneath the sheeting had been severely damaged by fire. This was the first time the Stroms learned of the extent of the damage from the fire. At the roofer's suggestion, the Stroms had the roofing sheeting repaired at a cost of $2,700.

¶13 A structural engineer testified for the Stroms that the repairs made by Logan were of no structural benefit. Shane Martin of C&M Construction testified that it would cost $69,260 to repair the home. Martin indicated that he would have to take off the roof and trusses and the sheetrock in the interior to check all the walls for damage. For three or four months, the Stroms would not be able to occupy the house. He further testified that the repairs that had been done by the Logans were ineffectual and that the structure was not substantially repaired.

¶14 Based upon the above findings of fact, the District Court concluded that the Logans negligently misrepresented that the fire damage that occurred in 1978 had been substantially repaired. The court reasoned that the Stroms were not obligated to cut holes in the walls to determine the extent of the fire damage, and there was no easy access to the attic. The District Court determined that the $69,260 repair suggested by Martin went beyond the repair of the fire damage; that the repair of the fire damage alone would cost $40,000 plus the $2,700 the Stroms spent on new sheeting for the roof repair, for a total damage award of $42,700.

1. <u>Were the Stroms' claims barred by the three-year statute of limitations?</u>

¶15 The Logans contend that the Stroms' claim for negligent misrepresentation was barred by the three-year statute of limitations set forth in § 27-2-204, MCA. Although the Logans raised the statute of limitations defense in their amended answer and in the pretrial order, the District Court did not specifically rule on that issue.

¶16 The Logans contend that the statute of limitations began running in 1994 when the parties signed the disclosure statement which advised of the existence of fire damage and stated that the property was sold "as is." Even assuming that the true condition of the house was concealed, the Logans contend that the Stroms could and should have discovered the house's true condition through the exercise of due diligence; in particular, they could have insisted upon a home inspection. The Stroms argue that they did not discover the fire damage until June 1997 when they had the roof repaired, and, as buyers, they had no duty to uncover the latent fire damage. Rather, the Logans, as the homeowner sellers, had a duty to "obtain and communicate information on the true condition of the house." Wagner v. Cutler (1988), 232 Mont. 332, 339, 757 P.2d 779, 783. We agree.

¶17 Although the District Court did not address the statute of limitations argument, the Stroms point out that the court did conclude that, since there was no easy access to the burned area, the Stroms had no obligation to cut holes in the walls to ascertain the extent of the damage. This conclusion is consistent with our holding in *Wagner*, that the buyer is "under no additional duty to discover the latent defects in the house." *Wagner*, 232 Mont. at 336-37, 757 P.2d at 782. Rather, the burden is on the homeowner to obtain and communicate information relating to the true condition of the home.

¶18 Where the facts constituting a claim are by their nature concealed, or where the defendant has taken action which prevents the injured party from discovering the injury or its cause, the three-year statute of limitations does not begin to run until the facts constituting the claim either were discovered or should have been discovered with due diligence. Section 27-2-102(3)(a), MCA. In the case *sub judice*, the fire damage was concealed behind new sheetrock. Furthermore, as noted above, due diligence did not require the Stroms to cut holes in the walls and ceilings.

¶19 We agree with the Stroms that they filed their complaint well within three years of first discovering the extent of the damage after the hail storm of June 1997.

¶20 We hold that the Stroms' claims were not barred by the statute of limitations.

## 2. Did the District Court abuse its discretion in refusing to dismiss Elizabeth Logan as a party defendant?

¶21 The Logans contend that although Elizabeth Logan was a co-owner of the house, she made no oral representations as to the conditions of the house and thus she should have

been dismissed as a defendant. The Stroms correctly point out that they relied upon both written and oral representations from the Logans, and the District Court so found. Elizabeth Logan was a signatory on the disclosure statement which contained representations as to the condition of the house and the repairs performed subsequent to the fire. Accordingly, she was a proper party defendant, and the District Court did not err in denying her motion to dismiss.

3. Did the District Court err in finding that the Logans had no reasonable grounds to believe their representations were true?

¶22 The Logans note that one of the elements of the cause of action of negligent misrepresentation is that the defendant must have made the representation without any reasonable ground for believing it to be true. Mattingly v. First Bank of Lincoln (1997), 285 Mont. 209, 216, 947 P.2d 66, 70. The Logans contend that the District Court erred in finding that the Logans had no reasonable ground to believe Robert Logan's representation that the damage had been substantially repaired was true.

¶23 This Court reviews findings of a trial court to determine whether they are clearly erroneous. Rule 52(a), M.R.Civ.P. A district court's findings are clearly erroneous if they are not supported by substantial credible evidence, if the trial court has misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed. Engel v. Gampp, 2000 MT 17, ¶ 31, 298 Mont. 116, ¶ 31, 993 P.2d 701, ¶ 31. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be less than a preponderance. Barrett v. ASARCO, Inc. (1990), 245 Mont. 196, 200, 799 P.2d 1078, 1080.

¶24 The Logans argue that they lived in the house for some seventeen years after the fire and never experienced any problems related to the fire. However, the Stroms point out that Robert Logan conceded he was not familiar with the applicable Code requirements and that no qualified person ever inspected the work he and his son had performed on the house. The only expert testimony was from the Stroms' two witnesses: structural engineer Byron Stahley and contractor Shane Martin. Stahley testified that the repairs did not meet the Code in 1978, and the home was not structurally sound. Martin testified that it was unreasonable to represent that the damage had been substantially repaired.

¶25 Having reviewed the record, we determine that the District Court's findings, and in

particular, the finding as to the falsity of the representations as to the repairs, are supported by substantial credible evidence. Based upon these findings of fact, the District Court correctly concluded that the Logans were negligent.

## 4. Did the District Court err in failing to consider the Stroms' contributory negligence?

¶26 The Logans contend that the Stroms, as purchasers of a home sold "as is," and in light of the disclosure of fire damage, had an "independent obligation to act as a reasonable purchaser and secure an inspection of the property" and that their refusal to do so amounts to contributory negligence. Although the District Court did not specifically reference contributory negligence, it did conclude that there was no easy access to the attic area and the Stroms were not obligated to cut holes in the walls or ceilings to determine the extent of the fire damage. The District Court's rejection of the Logans' contentions is tantamount to a conclusion that the Stroms had no affirmative duty to inspect the property for latent defects. We turn then to the question of whether the District Court's conclusion of law is correct.

¶27 In *Wagner,* the LDS church purchased a home in Gallatin County from Cutler. LDS did not occupy the house at any time. LDS then entered into a listing agreement with a realtor who listed the property with Multiple Listing Service (MLS). Based upon representations made by an MLS realtor that the house was "well built" and "to code," Wagner purchased the home. After taking possession, Wagner encountered numerous problems with the house, some of which were observable and some latent. She sued for misrepresentation and violation of the duty to inspect and disclose defects.

¶28 LDS contended, as do the Logans, that the "as is" and independent investigation clauses triggered the purchaser's obligation to thoroughly inspect the property to his own satisfaction and that failure to investigate bars the purchaser from any recovery. Citing Parkhill v. Fuselier (1981), 194 Mont. 415, 419, 632 P.2d 1132, 1135, we held that the independent investigation clause does not preclude justifiable reliance by a buyer upon misrepresentations of the seller and realtor. *Wagner*, 232 Mont. at 336, 757 P.2d at 782. Since Wagner relied upon the material misrepresentations of LDS as they appeared in the written listing agreement prepared by the realtor, she was under no additional duty to discover the latent defects in the house. We affirmed the court's holding that Wagner was accountable for obvious defects but was not responsible for latent defects.

¶29 LDS also argued that Wagner's failure to investigate constituted contributory

negligence. As noted above, the district court only allowed recovery for latent defects (hazardous chimney, broken sewage pump, faulty lawn sprinkler) and held Wagner accountable only for the defects that a reasonable buyer would have noticed. "With that distinction, the court properly addressed Wagner's contributory conduct in the transaction." *Wagner,* 232 Mont. at 339, 757 P.2d at 783.

¶30 The Logans, like LDS, argue that the buyer has an independent obligation to inspect the property and discover both latent and obvious defects and that failure to do so amounts to contributory negligence. We reject this contention as we did in *Wagner.* This is not a case where the defects were clearly observable like the unfinished basement, incomplete heating ducts and cracks in the patio. Rather, the defects in the Strom home were concealed behind walls and ceilings. Since the Stroms relied upon the Logans' representations that the repairs had been made, they had no independent obligation to cut holes in the walls or ceiling to ascertain the extent of the damage themselves. Their failure to take affirmative steps to discover latent defects does not amount to contributory negligence.

5. Did the District Court abuse its discretion in awarding prejudgment interest?

¶31 The District Court awarded the Stroms the sum of $42,700 together with interest from July 1, 1997, until the date of judgment. The Logans assume that the District Court's award of prejudgment interest was pursuant to § 27-1-210(1), MCA, which creates an entitlement to interest for damages awarded "that are capable of being made certain by calculation . . .." The Logans then argue that the award of interest in a negligence case such as this does not meet the standard of being a sum capable of being made certain prior to the issuance of judgment.

¶32 The Stroms contend that the controlling statute is not § 27-1-210(1), MCA, but rather § 27-1-212, MCA, which authorizes a discretionary award of interest in cases not grounded in contract. That statute provides as follows:

> In an action for the breach of an obligation not arising from contract and in every case of oppression, fraud, or malice, interest may be given, in the discretion of the jury. This section does not apply in actions for recovery of damages arising from injury to a person or property brought against a governmental entity under Title 2, chapter 9, parts 1 through 3, as amended.

¶33 We have held that the statutory discretion granted to the jury to award interest applies as well to a judge sitting as the trier of fact in a negligence case. Semenza v. Bowman (1994), 268 Mont. 118, 127, 885 P.2d 451, 457. Furthermore, in *Semenza* we held that § 27-1-212, MCA, unlike § 27-1-210, MCA, does not have a certainty requirement; it does not require liquidated damages. We hold that the award of prejudgment interest was within the court's discretion under § 27-1-212, MCA.

6. <u>Did the District Court abuse its discretion by denying the Logans' motion for summary judgment?</u>

¶34 The Logans contend that the District Court erred in not granting them summary judgment as to Elizabeth Logan's status as a party, the Stroms' contributory negligence and the adequacy of Robert Logan's disclosure to the Stroms. Since these issues have all been addressed above, there is no need to discuss them further.

¶35 The decision of the District Court is affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER