No. 01-103

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 46

STATE PERSONNEL DIVISION,
DEPARTMENT OF ADMINISTRATION,

Petitioner and Respondent,

v.

CHILD SUPPORT INVESTIGATORS, CHILD
SUPPORT DIVISION, DEPARTMENT OF
PUBLIC HEALTH AND HUMAN SERVICES,

Respondent and Appellant.

APPEAL FROM:   District Court of the First Judicial District,
In and For the County of Lewis and Clark,
Honorable Dorothy McCarter, Judge Presiding

COUNSEL OF RECORD:

For Appellant:

Michael Dahlem, Attorney at Law, Big Fork, Montana

For Respondent:

Vivian Hammill, Department of Administration, Helena, Montana

For Amicus Curiae:

Daniel McGregor, Board of Personnel Appeals, Helena, Montana

Submitted on Briefs:   July 12, 2001

Decided:   March 12, 2002

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1    Child Support Investigators appeal from the First Judicial District Court's order reversing the Montana Board of Personnel Appeals' final order in an employment classification dispute.  We reverse.

¶2    The following issue is raised on appeal:

¶3    Did the District Court err in reversing the Board of Personnel Appeals' final order  determining that the State Personnel Division incorrectly classified Child Support Investigators?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4    By way of background, the State of Montana utilizes a job classification system known as Benchmark Factoring Method (BFM).  There are applications, principles and steps for properly applying the BFM.  In accordance with the BFM, state employee positions are analyzed with respect to seven compensable factors: complexity; working conditions; knowledge, skills and abilities; management and supervision of others; supervision received; scope and effect of actions and decisions; and personal contacts.

¶5    There is a numerical hierarchy (point system) assigned to each of the seven factors.  Each numerical level has descriptive language.  A trained classifier reviews the job duties of a particular position and selects the lowest level in which the full intent of the language captures the job duties.  Once a factor level is determined, verification of the selected level is accomplished by comparing the position at issue with benchmark positions.

¶6    The points assigned to each factor level are added.  Depending on the number of points assigned, a position is allocated to a particular pay grade.  The higher the number of points, the higher the grade.  The higher the grade, the higher the employee's salary.

¶7    The complexity factor measures the difficulty and nature of the tasks, steps and  processes or methods, and the difficulty of mental processes, "necessary to identify what needs to be done" in a position.  It also measures the originality, problem solving, resourcefulness and conceptualization required to complete assigned tasks.  When determining the complexity level, the predominant duty rule applies, and only the work performed 50 percent or more of the time may be considered.  In those instances where no duty is performed 50 percent or more of the time, the predominant work is defined as

those tasks or duties comprising at least 50 percent of the time at or above the complexity level assigned.

¶8     Here, Child Support Investigators (Investigators) employed by the Department of Public Health and Human Services (DPHHS) filed a group classification appeal with the Montana Board of Personnel Appeals (Board).  The State Personnel Division (Division) reviewed the Investigators' duties and issued a response to the appeal in which the Division maintained the Investigators at a Level 5 complexity classification factor.

¶9     The Board's hearing officer conducted a contested case hearing.  The sole issue presented at the hearing was whether the Investigators' duties warrant a complexity level of 5 or 6 under the BFM.  At the hearing, the Division claimed that the Investigators' duties were properly classified at complexity Level 5.  The Investigators, however, contended that their duties were more complex than the Division acknowledged, and they insisted that an increase to complexity Level 6 was justified.

¶10     The hearing officer issued findings of fact, conclusions of law and a recommended order maintaining the Investigators at complexity Level 5.  In the hearing officer's Finding of Fact No. 1, he found that the Investigators each managed between 450 to 500 cases in which their basic major work responsibilities included determining paternity, determining financial and insurance needs and responsibilities and case tracking.  He found that 80 percent of the Investigators' work activities involved case monitoring–or making sure that payments are made, insurance is current, and that family circumstances are static or adjustments are made for changes of circumstances.  He further found that although the Investigators process each case with sufficient investigation and documentation to satisfy the requirements of a possible administrative hearing, less than 5 percent of the Investigators' duties involved actual hearing participation.  In a separate finding, the hearing officer stated that the Investigators' Position Description documented in great detail the Investigators' major duties.

¶11     Furthermore, in his findings, the hearing officer relied upon the hearing testimony of Art Swanson (Swanson), a Personnel Specialist for DPHHS, the testimony of Shannon Kirby (Kirby), a former Personnel Classification Specialist with the Department of Administration, who interviewed eight Investigators, and the Classification Manual's descriptive language for complexity Levels 5 and 6 in determining that the Investigators' "case work is fact driven, not concept driven." Accordingly, the hearing officer concluded that the Division properly applied the BFM and correctly classified the Investigators at complexity Level 5.

¶12     The Investigators appealed the hearing officer's findings, conclusions and recommended order to the Board.  The Board issued a final order in which it rejected, among other findings, most of the hearing officer's Finding of Fact No. 1.  Additionally, the Board included findings regarding:  the Investigators' participation on policy and procedure committees; their Level 6 knowledge, skills and abilities factor level; the testimony of Linda Dixon (Dixon), a former Personnel Classification Specialist with the Department of Administration; the testimony of former Administrative Law Judge John Koch; and the testimony of Bureau Chief Dennis Shober and Regional Supervisor Larry Racicot.  The Board concluded that the Division improperly applied the BFM and incorrectly classified the Investigators. The Board further concluded that the proper complexity level for the Investigators was Level 6.

¶13   In response, the Division filed a petition for judicial review of the Board's final order in the District Court.  The court reviewed the administrative record and the parties' briefs and conducted a hearing.  The court concluded that, with one exception, all of the hearing officer's findings were supported by substantial evidence.

¶14   The exception was the hearing officer's finding that 80 percent of the Investigators' case load involved monitoring.  The court stated that 80 percent of the cases were in "enforcement" status, and that monitoring was one of the duties involved in enforcement.  The court concluded the only language the Board properly deleted in Finding of Fact No. 1 was the word "monitoring."

¶15   Regarding the Board's added findings, the District Court noted that only the Investigators' predominant duties are considered in assessing the proper complexity level.  The court concluded that the Board's new findings, including references to Dixon's testimony and the Investigators' committee involvement, reflected the Board's consideration of non-predominant duties.  As to Dixon, the court stated, "[t]he Board simply chose to accept the contradictory opinion of one witness over other witnesses whose testimony was adopted by the hearing examiner."

¶16   The District Court concluded that the hearing officer correctly applied the BFM, and he properly concluded that the Investigators' complexity level was 5.  It ordered the Board to adopt the hearing officer's findings, conclusions and recommended order as modified by the court.

¶17   At this time, the Investigators appeal the District Court's decision.  The Board has filed a brief as Amicus Curiae in support of the Investigators' position.

## STANDARD OF REVIEW

¶18   In reviewing an administrative agency's findings of fact, the standard of judicial review for the District Court and this Court is whether the findings are clearly erroneous in view of the reliable, probative and substantial evidence in the whole record.  Section 2-4-704(2)(a)(v), MCA; State Personnel Division v. Board of Personnel Appeals (1992), 255 Mont. 507, 511, 844 P.2d 68, 71.

¶19   To determine if the district court's findings regarding an agency decision are clearly erroneous, this Court applies the following three-part test: (1) the record will be reviewed to see if the findings are supported by substantial evidence; (2) if the findings are supported by substantial evidence, it will be determined whether the trial court misapprehended the effect of the evidence; and (3) if substantial evidence exists and the effect of evidence has not been misapprehended, the Supreme Court may still decide that a finding is clearly erroneous when, although there is evidence to support it, a review of the record leaves the court with the definite and firm conviction that a mistake has been committed.  Weitz v. Montana Dept. of Natural Resources and Conservation (1997), 284 Mont. 130, 133-34, 943 P.2d 990, 992.  Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion.  It consists of more that a mere scintilla of evidence but may be less than a preponderance. Strom v. Logan, 2001 MT 30, ¶ 23, 304 Mont. 176, ¶ 23, 18 P.3d 1024, ¶ 23 (citation omitted).

¶20 An agency's conclusions of law will be upheld if the agency's interpretation of the law is correct. State Personnel Division, 255 Mont. at 511, 844 P.2d at 71(citation omitted).

## DISCUSSION

¶21 Did the District Court err in reversing the Board of Personnel Appeals' final order determining that the State Personnel Division incorrectly classified Child Support Investigators?

¶22 We break this issue into three parts: (1) Did the District Court err in concluding that the Board improperly rejected a portion of the hearing officer's Finding of Fact No. 1; (2) Did the District Court err in determining that the Board's modified findings failed to reflect the Investigators' predominant duties under the predominant duty rule; and (3) Did the District Court fail to accord the Board proper deference in reviewing its conclusion of law that the State Personnel Division incorrectly classified Child Support Investigators?

¶23 (1) Did the District Court err in concluding that the Board improperly rejected a portion of the hearing officer's Finding of Fact No. 1?

¶24 In the District Court, the Division contended that the Board improperly rejected a number of the hearing officer's findings of fact. The District Court, with one modification to Finding of Fact No. 1, agreed and ordered the Board to adopt the hearing officer's findings of fact as modified. On appeal, the Investigators and Amicus claim that the District Court erred in ordering the Board to adopt the hearing officer's Finding of Fact No. 1 because it is not based on substantial evidence.

¶25 An agency in its final order may not reject or modify the hearing officer's findings of fact unless it first determines from a review of the complete record and states with particularity in the order that the findings of fact were not based upon competent substantial evidence. Section 2-4-621(3), MCA. Whether substantial evidence supports a finding of fact is a question of law. Moran v. Shotgun Willies, Inc. (1995), 270 Mont. 47, 51, 889 P.2d 1185, 1187.

¶26 The purpose of § 2-4-621(3), MCA, is to prevent a reviewing body from substituting its judgment for that of the factfinder. Dept. of Social and Rehabilitation Services v. Shodair Hospital (1995), 273 Mont. 155, 160, 902 P.2d 21, 24. Section 2-4-704(2)(a)(vi), MCA, authorizes a reviewing court to reverse a Board's decision if it was "arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion[.]" A rejection of a hearing officer's findings in violation of § 2-4-621(3), MCA, constitutes an abuse of discretion under § 2-4-704(2)(a)(vi), MCA. Shodair Hospital, 273 Mont. at 160, 902 P.2d at 24 (citation omitted).

¶27 The hearing officer's Finding of Fact No. 1 provides:

> The Appellants each manage 450 to 500 cases. Their basic major work responsibilities for each case include determining paternity, determining financial and insurance needs and responsibilities of each parent, and case tracking. The Appellants process each case with sufficient investigation and documentation to satisfy the requirements of a possible

administrative hearing. Less than 5% of the Appellants' responsibilities involved actual hearing participation. Eighty percent of the Appellants' work activities involve case monitoring. This activity requires the Appellants to make sure that payments are made, that insurance is current, that family circumstances are static or that adjustments are made for change of circumstance, i.e. more or less income, majority of a child, additional children, marriage, change of health insurer and so on. Once a case is assigned to an investigator he or she monitors the case from the date a child is born and covered until the date of the child's majority. An investigator must make many phone calls and track the case on his or her computer. The Appellants regularly conduct fact investigation and attempt dispute resolution.

¶28    In its final order, the Board stated that "[a] portion of Finding of Fact No. 1 is not supported by substantial evidence, in that the most accurate initial outline of the Appellants' duties is found in their Position Description (Exhibit J-28)." The Board then deleted the following portions of Finding of Fact No. 1:

The Appellants each manage 450 to 500 cases. Their basic major work responsibilities for each case include determining paternity, determining financial and insurance needs and responsibilities of each parent, and case tracking. The Appellants process each case with sufficient investigation and documentation to satisfy the requirements of a possible administrative hearing.
. . .

Eighty percent of the Appellants' work activities involve case monitoring. This activity requires the Appellants to make sure that payments are made, that insurance is current, that family circumstances are static or that adjustments are made for change of circumstance, i.e. more or less income, majority of a child, additional children, marriage, change of health insurer and so on.

¶29    With respect to the first three deleted sentences, the District Court concluded that substantial evidence supported the statements. Upon reviewing the whole record, we hold that this portion of Finding of Fact No. 1 was supported by substantial evidence, and the District Court properly concluded that the Board rejected it in error.

¶30    The Board's deletion of the next statement that "[e]ighty percent of the Appellants' work activities involve case monitoring," is at the heart of this appeal. The District Court held the hearing officer erred in making this finding. The court stated that 80 percent of the Investigators' cases were in enforcement status, and that monitoring is one of their enforcement duties. The court further stated that the hearing officer appropriately described the Investigators' enforcement activities. The court concluded that "the only language properly deleted by the Board was the word 'monitoring' in reference to the description of what constituted 80 percent of the investigators' duties. The Board erred in deleting the remainder of the language in Finding No. 1."

¶31    The Board and Amicus claim that both the hearing officer and the District Court erred in concluding that Investigators spend 80 percent of their time "monitoring" or "enforcing" cases. They surmise that the hearing officer and court misconstrued Investigator Carla Rister's hearing testimony that 80 percent of an Investigators' caseload must be in "enforcement status" to mean that the Investigators spend 80 percent of their time monitoring and enforcing cases.

¶32    The Investigators point to Investigator Debra Edsall's testimony that she monitors cases only one hour per week. The Investigators insist "[t]he fact that child support orders have been established in approximately 80% of [the Investigators'] cases does not mean that investigators spend 80% of their time working on those cases."

¶33    In response, the Division argues that the hearing officer, in referring to "monitoring" rather than "enforcement," merely made a one word, de minimis error, and that the District Court properly corrected this error. The Division refers to the Investigators' testimony explaining that they monitor cases at the enforcement level to ensure that payments are made or that parents are in compliance with support orders. However, the Division fails to address how much time Investigators spend actually monitoring or enforcing cases.

¶34    We conclude that the Board properly rejected this portion of Finding of Fact No. 1. There exists no substantial evidence in the record to support the hearing officer's finding that 80 percent of the Investigators' work involves case monitoring. Nor is there substantial evidence to support the District Court's corrected version that 80 percent of the Investigators' work activities involve case enforcement.

¶35    Rather, the record indicates that 80 percent of an Investigators' caseload is in enforcement status. According to witness testimony, this means that support and medical orders have issued and the Investigators then take actions to enforce the orders if parents are not in compliance or modify the orders if necessary. Investigator Debra Edsall testified that investigators spend only one hour per week, or approximately 2.5 percent of their time, monitoring cases in enforcement status to determine whether parents are in compliance with support and medical orders. This testimony is consistent with the Investigators' Position Description. It includes case monitoring as one of several enforcement duties which comprise only 25 percent of the Investigators' time. The Position Description indicates the Investigators spend 73 percent of their time performing establishment duties necessary to locate parents, establish paternity and establish child and medical support orders.

¶36    Accordingly, we hold that the District Court erred in concluding that the Board improperly rejected the portion of the hearing officer's Finding of Fact No. 1 stating that 80 percent of the Investigators' work activities involve case monitoring.

¶37    (2)  Did the District Court err in determining that the Board's modified findings  failed to reflect the Investigators' predominant duties under the predominant duty rule?

¶38    In its final order, the Board adopted several of the Investigators' proposed findings of fact that the hearing officer did not accept. The Board concluded that the hearing officer's failure to include the

findings, which were supported by substantial evidence, left the Board with the definite and firm conviction that the hearing officer made a mistake. These additional findings included the Investigators' committee participation and development of new policies and procedures and their Level 6 knowledge, skills and abilities factor level. The Board also made the following Finding of Fact Nos. 11 and 12 regarding Linda Dixon's testimony:

> Dixon also testified that the Appellants' predominant duties merit a factor level 6 for complexity because they involve the interpretation and application of a complex set of statutes, case law, regulations, policies and procedures in the performance of complex and diverse professional assignments .
>  . . .
>
> Dixon further testified that the diversity of the work, combined with the Appellants' creativity, innovation, developmental work in terms of applying the guidelines and participating in committees that constantly revise how child support casework is done, together with the fact that case law is always changing, creates a level of complexity that removes the standard or routine nature of the work that is more typically described by Level 5.

¶39    The Board's added Finding of Fact No. 13 summarized former Administrative Law Judge John Koch's testimony that the child support guidelines that the Investigators utilized were "among the most complex in the nation and that the Appellants' level of legal knowledge of child support issues exceeds that of the attorneys who appeared before him."

¶40    The Board also added Finding of Fact No. 14 detailing an interview between Bureau Chief Dennis Shober and Regional Supervisor Larry Racicot regarding child support investigator duties. In sum, they stated that Investigators are involved in policy and procedure development, complex hearing issues, deciphering court decisions and manuals, resolving difficult, complex and sensitive problems, a "huge" variety of issues and case law activities, and advanced accounting systems.

¶41    Finally, the Board added Finding of Fact No. 15 stating that both Linda Dixon and Investigator Debra Edsall testified that the Investigators perform all of the duties Dennis Shober and Larry Racicot described. It further stated that "[d]uring her testimony, Shannon Kirby did not contest these statements or any other assertion of fact made by the Appellants' witnesses regarding the Appellants' job duties."

¶42    While the Board added these findings, it left intact the hearing officer's Finding of Fact No. 6 reflecting the testimony of Art Swanson, a Personnel Specialist for DPHHS, who identified complexity Level 5 as appropriate:

> Work involves the application of principles and practices of child support enforcement to determine financial responsibility, prepare written findings, and monitor cases in the investigation of alleged support violations for a specific region of the state. Actions consist of intellectual analysis which involves interpreting and enforcing state and federal

child support laws, reviewing and evaluating case files and determining the validity of information and the extent of alleged child support violation. Information is received in the form of records, documents, interviews, and affidavits and is handled by examining, planing [sic] and conducting investigations.

¶43    The Board also left intact the hearing officer's Finding of Fact No. 7 summarizing Shannon Kirby's testimony:

Shannon Kirby, a former Personnel Classification Specialist with the Department of Administration is the author of the Step II Classification Response (Exhibit J-35). Kirby interviewed eight employees in the Child Support Enforcement Division and reviewed the Appellants' position description. She concluded the complexity level 5 is appropriate for the Appellants. Kirby also compared the Appellants' 5 complexity designation to two benchmark positions, Child Support Investigator, grade 13 and Child Support Regional Supervisor, grade 16. This comparison supported her conclusion that the Appellants are properly rated at level 5 complexity.

¶44    In determining whether the Board properly modified the hearing officer's findings, the District Court was required to review the hearing officer's findings and determine whether they were based on competent substantial evidence under § 2-4-621(3), MCA. If the court determined that the findings were supported, it was required to then determine whether the Board's modification of the findings was characterized by an abuse of discretion under § 2-4-704(2)(a)(vi), MCA. Moran, 270 Mont. at 51-52, 889 P.2d at 1187-88.

¶45    Here,  the District Court concluded that the hearing officer's findings, as corrected by the court, were supported by substantial evidence in the record. The court did not expressly conclude that the Board abused its discretion in modifying the hearing officer's findings of fact. However, it criticized the modified findings, stating in part that Dixon's testimony, unlike that of Swanson and Kirby, included consideration of non-predominant duties:

It should be noted that only the predominant duties are to be considered in assessing the complexity factor under the Benchmark Factoring Method.  . . . From the record, there appears to be little dispute as to what the investigators' predominant duties are. While Dixon's opinion rested on the entire scope of the investigators' duties, the hearing examiner focused on the predominant aspects of the job. The Board subsequently made new findings reflecting its consideration of non-predominant duties in concluding that the complexity factor should be increased to level 6.

¶46    The Investigators claim that the District Court erred in concluding that Dixon's testimony was not based on the Investigators' predominant duties under the predominant duty rule. They state while the Board included references to several job duties which, independently, are not predominant, this does not

mean that the Board did not consider, collectively, the Investigators' predominant duties. In addition, the Investigators note that the hearing officer and the District Court did not focus on the predominant aspects of their job when finding that they spend 80 percent of their time monitoring or enforcing cases.

¶47    Similarly, the Amicus contends that since the Investigators do not have one single duty that constitutes 50 percent or more of their work, the Board appropriately developed all of the facts regarding the "myriad" of duties the Investigators perform before determining their complexity level.

¶48    In contrast, the Division maintains that the District Court's assessment of Dixon's testimony and the hearing officer's focus on the Investigators' predominant duties was a reliable reflection of the record as a whole. The Division admits that no one duty is predominant, but it argues that Kirby, rather than Dixon, properly identified the most difficult body of work that the Investigators perform at least 50 percent of the time. The Division criticizes Dixon's qualifications and claims she lacked familiarity with the Investigators' current position. It also questions her reliance on the "more advanced" Investigator Team Leader position description in forming an opinion regarding the Investigators' duties. The Division states "[Dixon's] testimony had far less foundation and credibility then [sic] Ms. Kirby's," and "[t]he Hearing Officer appropriately gave the greatest weight to Ms. Kirby's credentials and hands on, in depth analysis and conclusions." Finally, according to the Division, the Board "jumped to" its own findings of fact without articulating why the hearing officer's findings were not supported by substantial evidence in the record.

¶49    At the outset, we address the Division's criticism of Dixon's qualifications. The fatal flaw in the Division's argument is that there is no indication that the hearing officer found that Dixon was not qualified or mistakenly considered irrelevant materials when coming to her conclusions. Nor is there any indication that the hearing officer gave the greatest weight to Kirby's credentials, analysis and conclusions. Only the Division has made these statements. As the Division notes, the hearing officer heard the witnesses' testimony "first hand" and could judge the credibility of the witnesses. We conclude that if Dixon's credibility and expertise were not issues for the hearing officer, they are not issues for our consideration now.

¶50    Turning to the question of predominant duties, we must determine whether the Board's modification of the hearing officer's findings was characterized by an abuse of discretion. We conclude that it was not.

¶51    According to the State Classification Manual, portions of which were admitted as a joint exhibit at the hearing, the predominant duty rule provides:

> The factors Complexity, Supervision Received, and Scope and Effect and Personal Contacts are applied to the work performed 50 percent of the time or more. In those instances where no duty is performed 50 percent or more of the time, the predominant work is defined as those tasks or duties comprising at least 50 percent of the time at or above the complexity level assigned. The predominant duties must be fully equivalent to the overall intent of the factor-level description in order to receive the rating. [Emphasis in original.]

¶52 Here, all of the parties agree that the Investigators perform no one duty 50 percent of the time or more. As such, the hearing officer and the Board were required to consider those tasks or duties comprising at least 50 percent of the Investigators' time at or above the complexity level assigned. The Investigators' Position Description reveals that the Investigators spend 73 percent of their time establishing child support and medical support orders. Included in these establishment duties are researching, preparing and conducting cases for administrative hearings. Additionally, Dixon testified that the Investigators are actively involved in committees which address policy and procedure changes, such as computer committees, accounting committees and administrative hearing committees. Investigator Rister testified she has participated on medical support enforcement committees and that, in her office, Investigators were required to participate in at least one to two committees per year if necessary.

¶53 Dixon and Rister also testified that committee and hearing duties were not duties that the Investigators performed 50 percent of the time or more. In fact, it was established that hearing work, in particular, comprised approximately 5 percent of the Investigators' establishment duties.

¶54 Nevertheless, even if these duties comprise a small percentage of the Investigators' establishment duties, they are part of the establishment duties that the Investigators perform over 50 percent of the time. Consequently, we conclude that the Board was correct in its conviction that a mistake was committed due to the hearing officer's omission of the Investigators' proposed findings. Furthermore, we conclude that the District Court erred in determining that the Board's modified findings failed to reflect the Investigators' predominant duties under the predominant duty rule. We hold that, in accordance with § 2-4-621(3), MCA, the Board in its final order properly modified the hearing officer's findings of fact after determining from a review of the complete record and stating with particularity that the hearing officer's findings of fact, as a whole, were not based upon competent substantial evidence.

¶55 (3) Did the District Court fail to accord the Board proper deference in reviewing its conclusion of law that the State Personnel Division incorrectly classified Child Support Investigators?

¶56 The Investigators contend that, in contrast to the hearing officer's findings of fact, the Board was not required to defer to the hearing officer's conclusions of law or interpretations of administrative rules pursuant to § 2-4-621(3), MCA. They argue this is particularly true in this case since the hearing officer arrived at his legal conclusion assigning the Investigators a complexity level of 5 based on the "wrong set of job duties."

¶57 The Investigators claim that, on the other hand, the District Court was required to defer to the Board's legal conclusions. They argue that the Board is the final administrative authority on employee classification appeals under §§ 2-18-203, 2-18-1011, and 2-18-1012, MCA. Citing In re Grievance of Brady, 1999 MT 153, 295 Mont. 75, 983 P.2d 292, the Investigators contend that because it is the Board's legal responsibility to ensure that state employees are properly classified in accordance with the BFM, the District Court should have deferred to its interpretation of the applicable administrative rules and practices in this case.

¶58   In particular, the Investigators claim that Swanson's, Dixon's and Kirby's opinions regarding whether the Investigators' complexity level is 5 or 6 involve a dispute of law rather than fact, and, as such, the Board could accept or reject their opinions without deference to the hearing officer. They fault the District Court for applying a finding of fact standard of review to the opinions of the expert witnesses and, as a result, failing to defer to the Board's interpretation of the applicable rules governing the classification of employee positions.

¶59   The Amicus agrees. It states that the expert witness opinions regarding the proper complexity level "clearly address a conclusion of law, [and] cannot be argued to preclude Board consideration of the ultimate issue on the grounds that to do so would violate the review standard for a finding of fact. Such an action would improperly transfer authority to decide the ultimate issue from the Court to the expert witness." The Amicus also maintains that since the Board did not owe any deference to the hearing officer's conclusions of law, it could invalidate them under § 2-4-621(3), MCA.

¶60   The Division disagrees. It contends that the District Court did not owe deference to the Board's interpretation of the BFM rules, regulations and practices because the Board does not promulgate them– the Division does under § 2-18-202, MCA. As such, the Division insists that the District Court should have deferred to its interpretation of its own rules. It further states that under Matter of Mead, 235 Mont. at 213-14, 766 P.2d at 1303, the Board was required to uphold the Division's decision if it found that the Division properly followed its rules, regulations and practices.

¶61   We have previously addressed the district court's role in reviewing administrative decisions when it does not hear live testimony. In Weber v. Public Employees' Retirement Board (1995), 270 Mont. 239, 245, 890 P.2d 1296, 1299-1300, we stated that we do not review the district court to determine if substantial credible evidence supports its decision. Rather, we review the district court's decision to determine whether it properly applied the correct standard of review to the administrative decision–here, the Board's decision. That is, did the District Court determine whether the Board's findings of fact were clearly erroneous and was the Board's interpretation of the law correct?

¶62   The interpretation of an administrative rule and an agency's policy is a question of law. Easy v. State of Montana Dept. of Natural Resources and Conservation (1988), 231 Mont. 306, 308-09, 752 P.2d 746, 748 (citations omitted); Brady, ¶ 22. In its final order, an agency may reject or modify a hearing officer's conclusion of law and interpretation of administrative rules in the proposal for decision. Section 2-4-621(3), MCA. In other words, the Board in this case was not bound by the hearing officer's conclusions of law or its interpretation of the BFM rules and practices. Brady, ¶ 14.

¶63   However, the District Court was bound by the Board's conclusions of law and interpretation of administrative rules if they were correct. In determining whether an agency correctly interpreted its own rules, procedures and policies, we have explained:

> The agency's interpretation of its rule is afforded great weight, and the court should defer to that interpretation unless it is "plainly inconsistent" with the spirit of the rule. The agency's interpretation of the rule will be sustained so long as it lies within the range of reasonable interpretation permitted by the wording.

Brady, ¶ 22; Easy, 231 Mont. at 309, 752 P.2d at 748 (citations omitted).

¶64    Regarding employment classification cases in particular, we have recognized that the Department of Administration is responsible for developing guidelines for classification.  Matter of Mead, 235 Mont. at 216, 766 P.2d at 1305.  The Board in a classification appeal is limited, under § 2-18-203(2), MCA, and Matter of Mead, to determining whether a position is properly classified.  If the Board determines that the position is improperly classified, and the employee is, therefore, aggrieved, the Board can resolve the grievance under § 2-18-1012, MCA, by ordering the Division to reclassify the position.  State Personnel Division, 255 Mont. at 513, 844 P.2d at 72.  Such a determination necessitates an examination of the classification process utilized by the Division.  Matter of Mead, 235 Mont. at 214, 766 P.2d at 1303.

¶65    Simply stated, the Board, as the final administrative authority in the state employee classification process, must review and interpret the applicable rules promulgated by the Department of Administration.  Indeed, the Board could not fulfill its duty to determine whether employees were properly classified if it did not interpret the BFM rules, regulations and practices.  However, while the Board is free to reject its hearing officer's conclusions of law and interpretations regarding the BFM, the District Court may not reject the Board's conclusions and interpretations unless they are incorrect.

¶66    Here, the sole issue presented to the hearing officer was whether the Investigators' duties warranted a Level 5 or 6 complexity level.  The Board reviewed the hearing officer's interpretation and application of the Level 5 and Level 6 BFM Classification Manual descriptions.  Largely summarized, these definitions provide:

> Level 5:   Application of professional principles and practices.
>      Adapting policies, precedents and practices to specific situa-tions.
>      Standard, practical, or recurring professional assignments.
>      Advanced or novel technical assignments.
>
> Level 6:   Advanced application of professional principles and practices.
>      Complex and/or diverse professional assignments.
>      Advanced or innovative technical assignments.
>      Practical management issues and applications with a limited
>      range of management activities.

¶67    On the basis of his findings regarding the Investigators' duties, Kirby and Swanson's testimony, as well as the complete Level 5 and 6 classification descriptions, the hearing officer concluded that complexity Level 5 was appropriate for the following reasons:

> The Appellants' work duties and responsibilities, according to their position description
> and testimony, show that 80% of their work duties involve case monitoring.  The work

involves conflicting information, analysis and inter-pretation of interrelationships. The Appellants develop individual case solu-tions. The case work is fact driven, not concept driven. The Appellants apply policy and procedure to fact situations. The difference between level 5 and level 6, as they apply to the Appellants, is the application of procedure to facts, level 5, and not the interpretation or development of policy, level 6. The duties identified in the Appellants' position description and the Exhibit J-29 affidavit are complexity level 5. This conclusion is based upon the basic difference between level 5 and 6 which is fact driven in level 5 work versus theory development and application in level 6 work. The Appellants are properly assigned a level 5 for work complexity. The Department of Administration properly applied the classification methodology and reached the appropriate conclusion for complexity level assignment for the Appellants.

¶68    The Board reviewed the record and the Division's actions to determine if it properly classified the Investigators at a Level 5 complexity factor. Upon reviewing the Division's findings of fact and conclusion of law, the Board concluded that the Division improperly applied the classification methodology and incorrectly classified the Investigators in violation of § 2-18-202, MCA. The Board then concluded that the Investigators' complexity level was Level 6. Upon thorough review of the whole record, we determine that this conclusion was correct.

¶69    First, according to the BFM rules, the Division was required to interpret and apply the predominant duty rule when determining whether the Investigators' complexity level was 5 or 6. Here, the hearing officer concluded that "[t]he [Investigators'] work duties and responsibilities, according to their position description and testimony, show that 80% of their work duties involve case monitoring." As we discussed above, the Board appropriately concluded that the hearing officer erroneously found that the Investigators' predominant duty was case monitoring. Any conclusion flowing from this finding was suspect. As a result, the Board appropriately modified the hearing officer's findings to reflect all of the Investigators' duties under the predominant duty rule, and, based on the modified findings, proceeded to determine whether the hearing officer correctly concluded that complexity Level 5 was appropriate. This was entirely reasonable under the circumstances.

¶70    Second, contrary to the District Court's opinion, the Board did not improperly rely upon Linda Dixon's testimony in concluding that the Investigators' predominant duties merit a Level 6 complexity factor level. The District Court stated:

The Board relied on Linda Dixon's testimony, which contradicted that of Kirby and Swanson in her opinion as to the appropriate complexity level. The Board simply chose to accept the contradictory opinion of one witness over other witnesses whose testimony was adopted by the hearing examiner. As previously stated, the Board may reverse the hearing examiner's findings of fact only if those findings are not supported by substantial evidence.

¶71    In this case, the record reveals no real dispute among the experts as to what the Investigators'

predominant duties entailed. Rather, their dispute involved whether these duties warranted a complexity level of 5 or 6 under the BFM. The determination of whether a Level 5 or 6 complexity level is appropriate is a question of law–not a finding of fact. Therefore, the standard of review for a conclusion of law was applicable to the Board's conclusions as to the Investigators' complexity level, and the District Court erred by imposing particularity and substantial evidence requirements on the Board's conclusions of law. Pursuant to § 2-4-621(3), MCA, the Board was free to reach a different conclusion than the hearing officer on the ultimate issue in this case without implicating a finding of fact standard of review.

¶72 Finally, the Board's interpretation of the BFM rules, regulations and practices was plainly consistent with the spirit of the rules and reasonable. After considering all of the findings of fact as modified, as well as Kirby and Swanson's testimony, the BFM and the complexity level descriptions, the Board concluded that the Investigators' predominant work duties and responsibilities, according to their position description and testimony, involved the interpretation of ambiguous case law, statutes, and guidelines. It determined that they deal with complex and constantly changing regulations, policies and procedures, and they exercise considerable discretion in assessing and resolving sensitive problems in the areas of paternity and order establishment and enforcement. The Board also concluded the Investigators participate in the development and implementation of new policies and procedures and achieve a thorough knowledge of the principles and practices of their field as well as diverse fields such as legal procedure, investigative and mediation theory, dispute resolution techniques, negotiation and problem solving methodology.

¶73 In conclusion, the Board reasonably interpreted the applicable classification rules and correctly concluded that the Division improperly classified the Investigators in violation of § 2-18-202, MCA. Accordingly, we hold that the District Court erred in reversing the Board's final order. The District Court is reversed, and the Board's final order is reinstated in accordance with this opinion.

/S/ W. WILLIAM LEAPHART

We concur:
/S/ JAMES C. NELSON
/S/ JIM REGNIER
/S/ PATRICIA COTTER
/S/ TERRY N. TRIEWEILER