. 98-073

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 153

295 Mont. 75

983 P.2d 292

IN THE MATTER OF THE GRIEVANCE OF

MARK J. BRADY,

Petitioner and Appellant,

v.

MONTANA DEPARTMENT OF JUSTICE,

Respondent and Respondent.

APPEAL FROM: District Court of the Fourth Judicial District,

In and for the County of Missoula,

The Honorable Douglas G. Harkin, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Robert Terrazas; Mulroney, Delaney & Scott, Missoula, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General,

Kimberly A. Kradolfer, Ass't Attorney General, Helena, Montana

Submitted on Briefs: November 24, 1998

Decided: June 29, 1999

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

**¶1. Mark J. Brady (Brady) appeals the order of the Fourth Judicial District Court, affirming the order of the Attorney General.**

**¶2. We affirm.**

**¶3. We restate the issues:**

**¶4. 1. Whether the District Court erred in concluding that the Attorney General's rejection of findings of fact by the hearing examiner was not an abuse of discretion.**

**¶5. 2. Whether the District Court erred in concluding that Brady violated the Department of Justice's policy regarding "otherwise illegal" acts.**

Standard of Review

**¶6. We review a district court's conclusions of law to determine whether they are correct. Steer, Inc. v. Dept. of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603.**

Factual and Procedural Background

¶7. Brady began work as a criminal investigator with the Department of Justice's (Department's) Criminal Investigation Bureau (CIB) in 1985. In time he became Regional Agent in charge of the Region 3 office in Missoula. In March, 1992 a CIB agent brought approximately 134 pounds of contraband marijuana from Cascade County to the Missoula CIB office. On March 20, 1992 Missoula Sheriff Deputies arrived at the CIB office to bring the marijuana to the Missoula County evidence locker. Brady and the Deputies then conducted an undercover operation (the scam) on an individual named "Mikey," whom they believed was an associate of a drug dealer. Brady arranged that Mikey would follow him to a motel lot, where Brady would leave a car for a friend, and that Mikey would then drive him from the motel lot to another location. Before leaving the motel lot with Mikey, however, Brady told Mikey that he had to secure the car he had driven. While Mikey watched, Brady shifted a tarpaulin in the car trunk, briefly revealing the 134 pounds of contraband marijuana. Brady then closed the car trunk and left the lot with Mikey. During the scam, Brady and the car were under surveillance by law enforcement. In disclosing the marijuana to Mikey, Brady's purpose was not to sell it or to buy marijuana from Mikey but rather to impress Mikey that "Brady could be trusted in doing favors for others and such favors could involve questionable activities." After Mikey and Brady left the motel lot, Missoula County Sheriff's Deputies brought the marijuana to the Missoula County evidence locker.

¶8. In a letter dated August 13, 1992, Rick Day (Day), administrator for law enforcement activities in the Department, demoted Brady to the position of Criminal Investigator and reassigned him to the CIB office in Billings. Day concluded that Brady had failed to follow orders regarding a subordinate's training; that Brady had violated a direct order in a Butte undercover case; and that Brady had falsified reports and failed to follow procedures in conducting the scam in March, 1992. Day found that Brady conducted the scam, which Day described as a "flash," without "supervisor approval or knowledge" after 1600 hours on March 19, 1992 and submitted an activity report stating that he was off-duty after 1600 hours.

¶9. Brady challenged his discipline through established grievance procedures. A hearing was held. The hearing examiner found that neither Brady's conduct regarding the training of a subordinate nor his actions in the Butte undercover case warranted his demotion. The hearing examiner also found that the scam did not require prior approval by Brady's supervisor or by the Attorney General. The

**hearing examiner concluded that there was no just cause to demote Brady, and recommended that Brady be reinstated to his original position with appropriate backpay and benefits. The Department appealed the hearing examiner's recommendation.**

**¶10. The Attorney General found that the hearing examiner's findings concerning Brady's alleged failure to follow orders regarding a subordinate and his conduct in the Butte undercover case were not clearly erroneous. However, regarding the scam, the Attorney General found that the hearing examiner failed to give proper deference to the Department's consistent interpretation of its own "otherwise illegal acts" policy and that the hearing examiner ignored the plain meaning of the policy. Further, the Attorney General found that the record failed to support "the clearly erroneous conclusion of the Hearing Examiner addressed in Findings of Fact 37, 38, 44 and 45." The Attorney General rejected the hearing examiner's recommendation and upheld Brady's demotion. Brady appealed the Attorney General's ruling. The District Court affirmed the Attorney General's ruling, concluding that the scam required prior approval by Brady's supervisor and by the Attorney General and that Brady never received such approval. From that order Brady appeals.**

Discussion

**¶11. 1. Whether the District Court erred in concluding that the Attorney General's rejection of findings of fact by the hearing examiner was not an abuse of discretion.**

**¶12. Brady was disciplined in part for his alleged violation of the Department's otherwise illegal acts policy. That policy provides:**

An undercover employee or cooperating private individual shall not engage, except in accordance with this paragraph, in any activity that would constitute a crime under state or federal law if engaged in by a private person acting without the approval or authorization of the Supervisor. . . . For purposes of this paragraph, such activity is referred to as "otherwise illegal" activity.

(2) Participation in any activity that is proscribed by federal, state, or local law as a felony or that is <u>otherwise a serious crime</u> (such as illegal activity involving a significant risk of violence or physical injury to individuals)--but not including the purchase of stolen or

contraband goods or the making of false representations to third parties in concealment of personal identity or the true ownership of a proprietary--must be approved in advance by the Attorney General. Approvals shall be recorded in writing.

**¶13. Brady argues that the Attorney General used the wrong standard of review in rejecting certain findings of fact that the hearing examiner made, thereby committing an abuse of discretion under § 2-4-704, MCA. Brady relies on Brander v. Director, Dept. of Inst. (1991), 247 Mont. 302, 806 P.2d 530, where the Court considered the deference that an agency should give a hearing examiner's findings of fact. In *Brander*, the Court concluded that when an agency has not heard evidence, the agency may not reject a hearing examiner's findings of fact unless the agency determines "from a review of the complete record that the [hearing examiner's] findings were not based upon 'competent, substantial evidence.' " *Brander*, 247 Mont. at 308, 806 P.2d at 533. The *Brander* Court further concluded that if an agency rejects a hearing examiner's "factual recommendations in violation of [§ 2-4-621(3), MCA], it constitute[s] an abuse of discretion within the meaning of § 2-4-704(2)(a) (vi), MCA." *Brander*, 247 Mont. at 308, 806 P.2d at 533. Section 2-4-621(3), MCA, states in part:**

The agency . . . may not reject or modify the findings of fact unless the agency first determines from a review of the complete record and states with particularity in the order that the findings of fact were not based upon competent substantial evidence.

Section 2-4-621(3), MCA. Brady also relies on Brackman v. Board of Nursing (1993), 258 Mont. 200, 205, 851 P.2d 1055, 1058, arguing that the Attorney General failed to state with particularity why he rejected some findings of fact. Finally, Brady cites Moran v. Shotgun Willies, Inc. (1995), 270 Mont. 47, 889 P.2d 1185. In *Moran*, the Court concluded that a court should determine whether an agency's reversal or modification of a finding supported by substantial competent evidence was "characterized by abuse of discretion or clearly unwarranted exercise of discretion." *Moran*, 270 Mont. at 52, 889 P.2d at 1187-88. In the present case, Brady contends that substantial competent evidence supported the hearing examiner's findings and that the Attorney General committed an abuse of discretion in rejecting them.

**¶14. In determining whether the Attorney General improperly rejected the hearing examiner's findings of fact, we examine each one of the disputed findings. We note**

that the Attorney General did not state "with particularity in the order that the findings of fact were not based upon competent substantial evidence." Section 2-4-621 (3), MCA. Finding of Fact 37 stated that the Department did not have an established policy for either the transportation of contraband or the ethics of a law enforcement officer who possesses contraband in the course and scope of his employment. The District Court concluded that although this finding was not clearly erroneous, the finding had "no substantive value in determining the legal issue before the Hearing Officer." We agree. Brady was disciplined not for transporting contraband marijuana but rather for the scam. Moreover, the hearing examiner's determination that the scam occurred in the ordinary course of business required an interpretation of the Department's otherwise illegal acts policy. The hearing examiner's interpretation of that policy did not bind the Attorney General, because an agency "in its final order *may reject or modify* the conclusions of law and interpretation of administrative rules in the proposal for decision." Section 2-4-621(3), MCA (emphasis added). Thus, to the extent that the Attorney General failed to comply with § 2-4-621(3), MCA, in rejecting this finding, the error was harmless. We conclude that the Attorney General did not abuse his discretion in rejecting Finding of Fact 37.

¶15. In Finding of Fact 38, the hearing examiner determined that standard law enforcement operations include such techniques as buys, reverses, flashes, and scams, and the hearing examiner defined those operations. The District Court concluded that to the extent the hearing examiner relied on Finding of Fact 38 in concluding that Brady's conduct was outside the reach of the Department's otherwise illegal acts policy, the hearing examiner interpreted the Department's policy. We agree. Further, and contrary to the dissent, we conclude that the important question is not whether Brady's conduct is characterized as a scam or a reverse but rather whether his conduct was an "otherwise illegal act" under Department policy. In Finding of Fact 40, the hearing examiner concluded that "[s]tandard undercover operations where [the officer] . . . is making false representations to conceal his true identity or the true ownership of a proprietary are excluded from the requirement of prior approval by the Attorney General." The hearing examiner relied on Finding of Fact 38 in reasoning that because the scam was a standard undercover operation, no prior approval was necessary. However, the finding that the scam was exempt from the requirement of prior approval clearly required a conclusion about the Department's otherwise illegal acts policy that the Attorney General could reject under § 2-4-621 (3), MCA. Thus, to the extent that the Attorney General failed to comply with § 2-4-

621(3), MCA, in rejecting this finding, the error was harmless. We conclude that the Attorney General did not abuse his discretion in rejecting Finding of Fact 38.

¶16. In Finding of Fact 44, the hearing examiner stated that "[a]t no time did Mark Brady identify the guise car as stolen or the bales as marijuana or contraband of any nature. Mark Brady did not offer to sell any property to Mikey nor did he indicate any property was for sale or may be for sale at a later time." Even if this finding was supported by substantial competent evidence, we conclude that it does not bear on whether Brady violated Department policy. This finding states what Brady did not do, begging the question whether the scam violated the Department's policy. Thus, to the extent that the Attorney General failed to comply with § 2-4-621(3), MCA, in rejecting this finding, the error was harmless. We conclude that the Attorney General did not abuse his discretion in rejecting this finding.

¶17. Finding of Fact 45 stated that Missoula County Sheriff's Deputies had prior approval for their participation in the scam and that Brady informed a supervisor of the scam before the scam occurred. First, whether Missoula County Deputy Sheriffs had prior approval from their own agency does not bear on whether Brady violated the Department's otherwise illegal acts policy. The Department's otherwise illegal acts policy makes no exception for undercover operations when officers from other agencies have received prior approval from their supervisors. Thus, to the extent that the Attorney General failed to comply with § 2-4-621(3), MCA, in rejecting this finding, the error was harmless. Second, we conclude that the Attorney General's rejection of the finding that Brady informed a supervisor of the scam did not prejudice any substantive right of Brady. *Compare* § 46-20-701(2), MCA, providing in part that "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Even assuming that Brady had prior approval from his supervisor, a critical issue remains whether the scam required prior approval from the Attorney General.

¶18. Brady also suggests that the Attorney General erred in rejecting Finding of Fact 46, which concluded in pertinent part that "[i]n conducting the scam, Mark Brady exercised standard undercover operations requiring no prior approval by ' . . . making false representations to conceal his true identity or the true ownership of a proprietary.' . . . No otherwise illegal activity was contemplated or committed." As previously discussed, the hearing examiner's findings that Brady's scam was a standard undercover operation and that it was exempt from the otherwise illegal act

**policy's requirement of prior supervisory approval are conclusions about that policy. We conclude that the Attorney General did not abuse his discretion in rejecting these conclusions pursuant to § 2-4-621(3), MCA. We note that Brady also argues that the Department erred in determining that the scam occurred on March 19, 1992 instead of March 20, 1992. However, Brady makes no claim that if the scam occurred on March 20, 1992, the scam would be exempt from the requirements of the otherwise illegal acts policy. Thus, assuming that Brady is correct about the date of the scam, we conclude that he was not prejudiced by the Department's mistake. Finally, we note that the Attorney General found that Brady was not credible in claiming that his sole motive in conducting the scam was to show Mikey that he could be trusted to do favors. Contrary to the dissent, we conclude that this finding was not critical to the Attorney General's conclusion that Brady violated Department policy. We discuss below the Attorney General's conclusion that Brady violated Department policy.**

**¶19. 2. Whether the District Court erred in concluding that Brady violated the Department of Justice's policy regarding "otherwise illegal" acts.**

**¶20. The hearing examiner concluded that Brady did not violate the otherwise illegal acts policy, stating:**

The marijuana was being transferred from the Cascade County Sheriff's evidence locker to the Missoula County Sheriff's evidence locker when the scam was implemented. Maintaining custody and transferring contraband are normal tasks of agents and require no special supervisory approval. Possession of seized contraband by agents in the course and scope of work is not considered to be an otherwise illegal activity. The marijuana in question obviously was not being used in a "buy." Nor was it being used for a "reverse" or "flash" within the interpretations of Department of Justice policy and requiring pre-approval from a superior. Mark Brady did not violate the conservative interpretations of established written policy.

Drawing on the hearing examiner's conclusions, Brady argues that the scam was not subject to the otherwise illegal acts policy. He argues that he possessed the marijuana in the ordinary course of business and that the Department has no policy about the chain of custody for or the transportation of contraband. Brady appears to argue further that in conducting the scam he merely made false representations to third parties in concealment

of his true identity that did not require prior supervisory approval. However, Brady does not dispute that he did not receive prior approval for the scam from the Attorney General.

**¶21. We first consider the Attorney General's interpretation of the otherwise illegal acts policy. The Attorney General determined that the otherwise illegal acts policy "requires that no agent or cooperating private individual <u>can engage in conduct which would constitute a crime under state or federal law if the conduct was engaged in by a private person</u> unless appropriate authorization is obtained." The Attorney General concluded that**

Possession of 134 pounds of marijuana [by a private person], having a street value of between $385,000 and $536,000 is a felony under both state and federal law. An agent must have permission of both his supervisor and the Attorney General to use such contraband in the furtherance of an undercover investigation.

Further, the Attorney General determined that there were no exceptions to this policy for the transport of contraband. Based on this interpretation of the otherwise illegal acts policy, the Attorney General concluded that Brady had violated the Department's otherwise illegal acts policy.

**¶22. The interpretation of an agency's policy is not a question of fact but a question of law, and the agency is entitled to considerable deference in the interpretation of its own policies. *See* Easy v. Dept. of Natural Res. & Conserv. (1988), 231 Mont. 306, 308, 752 P.2d 746, 748 (concluding "[t]he interpretation of an administrative rule is a question of law"). The Court in *Easy* further concluded:**

The agency's interpretation of its rule is afforded great weight, and the court should defer to that interpretation unless it is "plainly inconsistent" with the spirit of the rule. The agency's interpretation of the rule will be sustained so long as it lies within the range of reasonable interpretation permitted by the wording.

*Easy*, 231 Mont. at 309, 752 P.2d at 748 (citations omitted).

**¶23. In the present case, the Attorney General's interpretation of the otherwise illegal acts policy is consistent not only with its plain meaning but with public policies to**

**protect the public and law enforcement officials. The Attorney General found that**

[t]here are a number of public policy considerations which arise in running a "reverse" operation which justify a higher level of scrutiny. . . . Those considerations include: avoiding entrapment and outrageous government conduct claims which would threaten the viability of a prosecution; protecting the safety of the officer involved and the public in a situation where large amounts of drugs or money may be involved; . . . [and] protecting officer integrity and integrity of the prosecution.

We conclude that the Attorney General's interpretation of the Department's otherwise illegal acts policy was not " 'plainly inconsistent' with the spirit of the rule" and that it was "within the range of reasonable interpretation permitted by the wording." *Easy*, 231 Mont. at 309, 752 P.2d at 748.

**¶24. Having determined that the Attorney General's interpretation of the otherwise illegal acts policy was reasonable, we consider whether the District Court correctly concluded that Brady violated the otherwise illegal acts policy. As a private citizen, Brady's possession of 134 pounds of marijuana would have been illegal. *See* §§ 45-9-102 (criminalizing possession of dangerous drugs) and 50-32-101(6) and 50-32-222(4)(t), MCA (defining marijuana as a dangerous drug). While Brady made false representations in concealing his identity that did not require supervisory approval, the hearing examiner also found that Brady attempted to persuade Mikey that he was involved in questionable activities. The 134 pounds of marijuana that Brady displayed were an important part of that undercover operation. Thus, the record clearly establishes that Brady engaged in a scam that would be a felony if performed by a private citizen and that went beyond making false representations to third parties in concealment of his personal identity. Further, Brady did not receive prior approval for the scam from the Attorney General. We conclude that the scam was an "otherwise illegal" activity under the Department's policy and that Brady violated the policy by failing to obtain prior approval for the scam from the Attorney General. We hold that the District Court did not err in concluding that Brady violated the Department's policy.**

**¶25. Finally, we reject Brady's argument that the Attorney General's designation of the scam as a "reverse" when Brady's supervisor called the scam a "flash" was "arbitrary and capricious" and reversible error. Because Brady makes no claim that**

the Attorney General's description of the scam as a flash prejudiced any of his substantive rights, we conclude that this argument is without merit.

¶26. Affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ JIM REGNIER

Justice Terry N. Trieweiler dissents.

¶27. I dissent from the majority's conclusion that the Attorney General did not abuse his discretion when he reversed findings of fact made by the Department's hearing examiner. I would conclude that the District Court erred when it affirmed the order of the Attorney General.

¶28. In *Brander v. Montana Dep't of Insts.* (1991), 247 Mont. 302, 806 P.2d 530, we held that before a director of an agency or the head of a department who neither heard nor personally observed testimony given at a hearing can reject the factual findings of the person who actually heard and observed the evidence, the director must determine from a review of the complete record that the findings were not based upon "competent, substantial evidence." *Brander*, 247 Mont. at 308, 806 P.2d at 533. We held that if a department director does reject a hearing examiner's factual findings which are supported by substantial evidence, then it constitutes an abuse of

discretion within the meaning of § 2-4-704(2)(a)(vi), MCA, and is a basis for reversal of the director's decision in a court of law.

¶29. The majority concludes, without analyzing the hearing examiner's findings, that it is irrelevant whether they were supported by substantial evidence because the Attorney General, when he rejected the recommendation of the hearing examiner, simply applied the facts to Department policy and, assuming the findings of the hearing examiner were correct, that policy was violated. I disagree.

¶30. Department policy prohibited engaging in illegal activity without the approval of the Attorney General. However, transportation of contraband by law enforcement officials so that it can be preserved as evidence is not illegal. Neither is there any specific law which makes it illegal for a law enforcement officer to display that contraband to a third person during the course of its transportation.

¶31. The hearing examiner found that the contraband was displayed without any suggestion that it was available for sale during the normal course of its transportation within the scope of Brady's professional responsibilities. Therefore, he concluded that Brady's conduct was not illegal. In rejecting the hearing examiner's recommendation, the Attorney General had to reject a number of his findings and reweigh the credibility of the witnesses who testified before the hearing examiner without the benefit of having personally observed the demeanor of those witnesses and without being in any position to weigh their relative credibility.

¶32. For example, the hearing examiner found:

¶33. 1. That the marijuana in question was transferred from the Cascade County Sheriff's office to the Missoula CIB office for storage during the regular course of the CIB's responsibilities.

¶34. 2. On the following day, Mark Brady assisted the Missoula County Sheriff's Department in transferring the same marijuana from the CIB office to the County office for storage.

¶35. 3. On the way from the CIB office in Missoula to the Missoula County storage office, Brady allowed a third person suspected of criminal activity to observe the marijuana in order to gain his trust.

¶36. 4. At no time did Brady discuss the nature of the contraband with the third person; nor did he offer to sell it to him or indicate that it was for sale or would be for sale at any future time.

¶37. 5. Because there was no offer to sell the contraband, nor any suggestion that it would ever be for sale, Brady did not conduct a "reverse" (the sale of contraband goods), nor a "flash" (a display to convey the impression the contraband will be available for sale).

¶38. 6. Therefore, because the marijuana was simply displayed while in the protected care of law enforcement officers performing official business, nothing done by Brady was proscribed by federal, state, or local law.

¶39. All the hearing examiner's findings were supported by substantial evidence. However, the Attorney General ignored the hearing examiner's findings and made the following findings of his own which were critical to his rejection of the hearing examiner's recommendation:

¶40. 1. Brady's act of displaying contraband to the third person was not a "scam," as found by the hearing examiner, but a "reverse" operation.

¶41. 2. "Reverse" operations justify a higher level of scrutiny than other undercover operations.

¶42. 3. Brady's contention that he displayed the marijuana to the third person for the sole purpose of proving he could be trusted is not credible.

¶43. 4. Brady's assertion that he did not intend to give the third person the impression he was involved in drug trafficking was not believable.

¶44. 5. Brady's assertion that displaying the marijuana was too insignificant to record in his daily activity reports was not believable.

¶45. 6. The hearing examiner's findings that Brady did not attempt to sell the marijuana and made no attempt to indicate that it was for sale were clearly erroneous.

¶46. 7. The marijuana was displayed to give the impression that Brady was engaged in the sale of dangerous drugs, which is a violation of the law.

¶47. 8. Although an officer may legally possess contraband if it is held for purposes of maintaining it as evidence or use in a criminal prosecution pursuant to §§ 46-5-301 and -311, MCA, this marijuana was not simply possessed for the purpose of maintaining evidence.

¶48. 9. Possession of marijuana in the amount possessed by Brady on the occasion in question would constitute a felony for any private citizen.

¶49. The Attorney General's reasoning, accepted by the District Court and the majority of this Court, is that because a private citizen could not lawfully possess 134 pounds of marijuana, then Brady could not lawfully possess 134 pounds of marijuana, and his conduct when he possessed the marijuana without the Attorney General's permission and displayed it to a third person, violated departmental policy. However, statutory law provides, and the Department agrees, that it is not unlawful for a law enforcement officer to possess contraband drugs for the purpose of storing and preserving them as evidence pending a criminal prosecution. Therefore, it cannot be unlawful for a law enforcement officer to transfer those same contraband drugs from one storage facility to another.

¶50. The Department contends that even though transportation of the marijuana might have been lawful, there is nothing in the law which permits a law enforcement official to display illegal drugs to a third person during the course of possession or transportation and, therefore, Brady's lawful possession of the marijuana is transformed into an act which would have been unlawful had it been done by a private person. This type of reasoning seems disingenuous.

¶51. Instead, I would conclude that if Brady's possession of the marijuana for the purpose of transportation was lawful, and if there is no statutory prohibition against displaying the drugs to a third person during the course of transportation, then the fact that he did so does not become unlawful simply because the drugs were displayed to a person who was being investigated for unlawful activity.

¶52. The critical factual issue was whether a third person was merely allowed to observe the drugs, or whether Brady engaged in a "reverse" operation by offering to

sell the drugs, or a "flash" operation by inferring that the drugs were available for sale. That factual issue was decided by the hearing examiner who listened to the testimony and observed the demeanor of the witnesses in Brady's favor. The Attorney General, without the same benefit of personal observation, reversed those findings and concluded they were clearly erroneous, even though they were supported by substantial evidence.

¶53. I conclude, therefore, based on the standard of review established in *Brander*, that the Attorney General abused his discretion and that the District Court erred when it affirmed the Attorney General's order.

¶54. For these reasons, I dissent from the majority opinion. I would reverse the judgment of the District Court.

/S/ TERRY N. TRIEWEILER

Justice William E. Hunt, Sr., joins in the foregoing dissenting opinion.

/S/ WILLIAM E. HUNT, SR.