No. 03-075

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 117

JURO'S UNITED DRUG,

        Plaintiff and Appellant,

   v.

MONTANA DEPARTMENT OF PUBLIC
HEALTH AND HUMAN SERVICES,

        Respondent and Respondent.

APPEAL FROM:    District Court of the First Judicial District,
                      In and For the County of Lewis & Clark, Cause No.  BDV-2001-540
                      Honorable Jeffrey M. Sherlock, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Wendy Holton, Attorney at Law, Helena, Montana

        For Respondent:

        Barbara Hoffmann, Special Assistant Attorney General, Department
        of Public Health and Human Services, Helena, Montana

                     Submitted on Briefs:  August 28, 2003

                                Decided:  May 4, 2004

Filed:

              _____
                          Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1    Juro's United Drug (Juro's) appeals from the order on judicial review entered by the First Judicial District Court, Lewis and Clark County, upholding a final administrative decision. We affirm.

¶2    The restated issue on appeal is whether the District Court erred in upholding a final administrative decision which concluded that a department's interpretation of an administrative rule as precluding reimbursement of shipping costs for diapers was reasonable and not plainly inconsistent with the rule's spirit.

## BACKGROUND

¶3    The Montana medicaid program (Medicaid) is a joint federal-state program that provides necessary medical services to qualified individuals. The Department of Public Health and Human Services (Department) administers Medicaid in Montana. Section 53-6-101(1), MCA. Juro's is a Medicaid-enrolled provider of medical supplies–including diapers–and durable medical equipment in Billings, Montana.

¶4    Juro's transported diapers to its customers in the Billings area–including its Medicaid customers–at no extra charge via a company truck and driver. It sent diapers via common carrier to its customers outside the Billings area. Juro's billed its non-Medicaid customers outside the Billings area for the costs of shipping diapers. It submitted claims to the Department for reimbursement of costs for shipping diapers to Medicaid recipients outside the Billings area using Medicaid code W2839, "Shipping Charges for Minor Supplies."

2

Between October 1, 1995 and March 31, 2000, those claims totaled $10,220.94. The Department reimbursed the claims.

¶5 The Department subsequently audited paid claims data from October 1, 1995 through March 31, 2000 (the audit period). In August of 2000, it notified Juro's that the $10,220.94 was improperly billed and paid under Medicaid code W2839 because Rule 37.86.1806(7), ARM, the language of which was in effect throughout the audit period, provided that "Medicaid will not reimburse delivery fees in addition to the amount reimbursed for diapers." Stated differently, the Department interpreted the Rule to preclude Medicaid reimbursement of any costs associated with transporting diapers from the provider to Medicaid recipients.

¶6 Juro's disputed the Department's interpretation. It contended the Rule only precluded reimbursement for "provider travel" costs, such as those Juro's incurred in transporting diapers to its customers in the Billings area via company truck. It also argued that Medicaid code W2839 authorized claims for the costs of shipping "minor supplies," and noted the Department had previously indicated "minor supplies" included diapers. Juro's requested a "fair hearing" before a hearing officer of the Montana Board of Public Assistance (Board). The hearing occurred in December of 2000.

¶7 Juro's operations manager, Janna Jurovich, testified at the hearing. Frank Malek testified for the Department. The hearing officer's subsequent Fair Hearing Decision (Decision) ultimately concluded the Department's interpretation of the Rule's term "delivery fees" to include both costs of shipping via common carrier and "provider travel" costs with

3

regard to diapers was reasonable and not inconsistent with the Rule. Accordingly, it ordered Juro's to reimburse the Department for the improperly submitted and paid charges associated with shipping diapers to its Medicaid patients outside the Billings area during the audit period.

¶8      Juro's appealed to the Board, which unanimously adopted the Decision, and then petitioned the District Court for judicial review. The District Court affirmed, and Juro's appeals. Juro's does not challenge any finding of fact in the Decision.

## STANDARD OF REVIEW

¶9      The interpretation of an administrative rule is a question of law. *State Personnel v. Investigators*, 2002 MT 46, ¶ 62, 308 Mont. 365, ¶ 62, 43 P.3d 305, ¶ 62 (citations omitted). Under the Montana Administrative Procedure Act (MAPA), a district court may review an administrative decision in a contested case to determine–among other things–whether the substantial rights of the party seeking review have been prejudiced because the decision is "affected by . . . error of law." *See* § 2-4-704(2)(a)(iv), MCA. This Court employs the same standard when reviewing a district court's order affirming or reversing an administrative decision. *Marble v. Dept. of Health & Human Serv.*, 2000 MT 240, ¶ 16, 301 Mont. 373, ¶ 16, 9 P.3d 617, ¶ 16 (citation omitted). Consequently, like the District Court, we determine whether the Decision's conclusion that the Department's interpretation of the Rule was reasonable and not plainly inconsistent with the Rule's spirit is correct. *See Langager v. Crazy Creek Products, Inc.*, 1998 MT 44, ¶ 13, 287 Mont. 445, ¶ 13, 954 P.2d 1169, ¶ 13 (citation omitted).

4

**DISCUSSION**

¶10 Is the Decision's conclusion that the Department's interpretation of Rule 37.86.1806(7), ARM, was reasonable and not plainly inconsistent with the Rule's spirit correct?

¶11 As stated above, Rule 37.86.1806(7), ARM, provided that "Medicaid will not reimburse delivery fees in addition to the amount reimbursed for diapers." The Decision set forth the following analysis:

> Obviously, basic physical differences can be seen between *delivering* a product to a customer via company truck versus *shipping* the product by common carrier. But despite the obvious differences, there are obvious similarities as well. Both methods have the ultimate purpose of transferring a product to a customer, and there is a financial cost associated with either mode of transfer. In this case it is concluded that the similarities carry the day.

The Decision concluded the Department's interpretation of the Rule's term "delivery fees" to include shipping fees for diapers is "reasonable and not inconsistent with ARM 37.86.1806(7)."

¶12 In *Easy v. Dept. of Natural Res. & Conserv.* (1988), 231 Mont. 306, 309, 752 P.2d 746, 748 (citations omitted), we determined that an "agency's interpretation of its rule is afforded great weight," courts should "defer to that interpretation unless it is 'plainly inconsistent' with the spirit of the rule," and the interpretation will be upheld "so long as it lies within the range of reasonable interpretation permitted by the wording." We note that *Easy* was not a MAPA case, but we have applied its principles in MAPA cases. *See State Personnel*, ¶ 63; *Brady v. Montana Dept. of Justice*, 1999 MT 153, ¶ 22, 295 Mont. 75, ¶ 22,

5

983 P.2d 292, ¶ 22. Conversely, of course, we do not defer to an "incorrect agency decision." *Grouse Mountain Assoc. v. PSC* (1997), 284 Mont. 65, 69, 943 P.2d 971, 973.

¶13 Juro's primary assertion of error in the Decision's conclusion regarding the Department's interpretation is that the Department changed its interpretation when it assessed the overpayment in 2000. In support of this position, Juro's points to the 1995 notice of the Rule's amendment, the actual reimbursement of claims for diaper shipping costs during the audit period, and a 2001 amendment to the Medicaid rules. Juro's also argues the analysis of similarities and differences between shipping and delivery in the Decision was improper, and the "common meaning" of the term "deliver" indicates the term "delivery fees" does not include shipping costs. We address each argument in turn.

**1995 Notice of the Rule's Amendment**

¶14 Juro's asserts the following comment and response in the 1995 notice of amendment to the Rule (before it was renumbered) indicates the Department initially interpreted the Rule to prohibit reimbursement of provider travel only, and the Department should be bound by that interpretation:

> COMMENT: Why will the department not cover delivery services for diapers?
>
> RESPONSE: [Another rule from the same subchapter regarding Medicaid prosthetic devices, durable medical equipment and medical supplies] states that provider travel is not reimbursable; delivery is a form of provider travel, which is not separately reimbursable for any durable medical equipment. The department believes the proposed fee for diapers is reasonable to reimburse providers and assure access for recipients without an additional delivery fee.

6

18 Mont. Admin. Reg. 1973 (Sept. 28, 1995). According to Juro's, the Department changed its position in 2000 by interpreting the Rule to preclude reimbursement for both "provider travel" and common carrier delivery.

¶15 The Department responds that its interpretation of the Rule did not change between 1995 and 2000. It correctly observes that the comment and response relied upon by Juro's does not address the meaning of the term "delivery fees" or limit that term to "provider travel." The commentary merely addresses the Department's reasons for not reimbursing delivery services. Moreover, the description of delivery as "a form of provider travel" suggests that "provider travel" is a broader term than Juro's posits here.

¶16 The Department also characterizes Rule 37.86.1806(7), ARM, as a cost containment measure which set an all-inclusive fee for diapers. The response quoted above is not inconsistent with this characterization.

¶17 In addition, the Department points to another comment and response in the 1995 notice of the Rule's amendment:

> COMMENT: How did medicaid come up with fees for diapers, shields and pads?
>
> RESPONSE: The department sent surveys to all suppliers that provide diapers for medicaid recipients and asked them about prices charged for diapers, and the amount needed to continue supplying medicaid recipients with diapers. Prices ranged from 40 cents to $1.50. Suppliers on the upper end of the scale were also increasing prices charged to medicaid because they were delivering as well as selling diapers to their medicaid clients. We then looked at suppliers in particular areas and found that there were already suppliers in all areas supplying diapers at 70 cents or less. The department has not received any comments from suppliers indicating that they would not be providing diapers because of the new medicaid fee schedule. The department believes

7

the proposed fee is reasonable and adequate to reimburse providers and assure access for recipients.

18 Mont. Admin. Reg. 1970 (Sept. 28, 1995).

¶18　This commentary reveals that, in setting a "reasonable and adequate" fee, the Department considered the impact of transport costs–namely, that some suppliers were "increasing prices . . . because they were delivering"–but providers also existed "in all areas supplying diapers at 70 cents or less." The Department's discussion of its fee-setting process indicates that the intent behind the Rule was to contain costs. Other subsections of the Rule reflect a similar intent. *See, e.g.*, Rule 37.86.1806(1)(a), ARM (providing that the Department will pay a provider the provider's customary charge for the item or the price set by the Department's fee schedule, whichever is lower). Overall, the commentary lends support to, but in any event does not establish error in, the Decision's conclusion that the Department's interpretation of the Rule as precluding reimbursement of shipping costs was neither "plainly inconsistent" with the Rule's spirit nor outside the range of reasonable interpretation. *See State Personnel*, ¶ 63.

**Actual Reimbursement**

¶19　Juro's next argues the Department's actual reimbursement of Medicaid code W2839 claims for diaper shipping costs during the audit period "reinforced" Juro's interpretation that the Rule precluded reimbursement for provider delivery only. In other words, Juro's contends that the Department's reimbursement of diaper shipping costs over the years equates to the Department's interpretation of the Rule as authorizing such reimbursement.

8

¶20 The record reflects the Department pays claims on an "as submitted" basis and later audits those payments. As a practical matter, the Department–similar to many businesses–cannot audit every claim as received. The Department audits claims and assesses overpayments only after paying claims during an audit period. Thus, the Department's payments do not constitute an interpretation of the Rule as allowing reimbursement of diaper shipping costs.

¶21 Moreover, the Montana Legislature has expressly provided that the Department "is entitled to collect from a provider, and a provider is liable to the department for . . . the amount of a payment . . . to which the provider was not entitled, regardless of whether the incorrect payment was the result of department or provider error or other cause . . . ." Section 53-6-111(2)(a)(i), MCA. Juro's argument that the Department's reimbursement of claims precluded it from later determining the reimbursed claims constituted an overpayment would render § 53-6-111(2)(a)(i), MCA, meaningless. We refrain from interpreting a statute in a manner that would defeat its purpose. *Hawley v. Board of Oil and Gas Conservation*, 2000 MT 2, ¶ 12, 297 Mont. 467, ¶ 12, 993 P.2d 677, ¶ 12 (citation omitted). Therefore, we reject Juro's argument.

**2001 Amendment**

¶22 Juro's also asserts in a footnote, without any supporting authority, that the Department's 2001 amendment to its rules "adds credence" to its contention that the Department changed its interpretation. As amended, the rules provide that the Department does not reimburse "any delivery, mailing or shipping fees or other costs of transporting the

9

item to the recipient's location" for prosthetic devices, durable medical equipment, and medical supplies–including diapers. *See* 8 Mont. Admin. Reg. 605 (Apr. 26, 2001).

¶23 We generally apply the same principles in construing administrative rules as we do in construing statutes. *Glendive Medical Center, Inc. v. DPHHS*, 2002 MT 131, ¶ 15, 310 Mont. 156, ¶ 15, 49 P.3d 560, ¶ 15 (citation omitted). Amendments are presumed to indicate an intent to change existing law. *See, e.g.*, *State ex rel. Mazurek v. District Court*, 2000 MT 266, ¶ 18, 302 Mont. 39, ¶ 18, 22 P.3d 166, ¶ 18 (citations omitted). The presumption is not conclusive, however, because an amendment may merely clarify the lawmaker's intent. *See Mont. Dept. of Rev. v. Am. Smelting & Refining* (1977), 173 Mont. 316, 325, 567 P.2d 901, 906 (citation omitted); *Madison v. Pierce* (1970), 156 Mont. 209, 216-17, 478 P.2d 860, 864.

¶24 Here, the Department stated that the 2001 amendment would "clarify" its longstanding policy not to pay any delivery fees or shipping costs for diapers and durable medical equipment. *See* 8 Mont. Admin. Reg. 610 (Apr. 26, 2001). Absent both authorities to the contrary and a developed argument, we decline to address Juro's assertion regarding the 2001 amendment further. *See* Rule 23(a)(4), M.R.App.P.

**Similarities and Differences**

¶25 As noted above, the Decision stated shipping and delivery were similar, because both involve associated costs and the ultimate purpose of transferring a product to a customer. Juro's asserts this analysis is irrelevant to the interpretation of the Rule's language that "Medicaid will not reimburse delivery fees in addition to the amount reimbursed for

10

diapers." We disagree. In determining whether the Department's interpretation of the Rule is reasonable, the central question is whether the term "delivery fees" includes shipping costs. The analysis of similarities and differences between delivery and shipping relates to this question.

¶26 Juro's also challenges the observation in the Decision that both shipping and delivery incur costs. It contends the failure to distinguish the "incremental" shipping costs added to a business's overhead from the "fixed costs" of provider delivery constitutes error. However, Juro's does not support this conclusory statement with citation to authority or substantial discussion. *See* Rule 23(a)(4), M.R.App.P. While it is true that fixed and incremental costs are different, both are costs. Juro's simply does not articulate a rationale for its notion that the issue of whether the Department's interpretation of the Rule is reasonable rests in any way on the distinction between types of costs.

**"Common Meaning"**

¶27 Finally, Juro's argues the Department intended to distinguish the term "delivery" from the term "shipping" by using the term "delivery fees" in the Rule and the term "shipping charges" in the description of Medicaid code W2839, under which Juro's submitted the claims at issue. Specifically, it argues "the most common meaning of the term 'deliver' is to hand over, which implies a direct transaction between two parties. On the other hand, the term 'ship' means to cause to be transported–this implies that a middleman has a part in the transaction." This analysis apparently stems from entries in *Webster's New Collegiate Dictionary*, the year and edition of which are not of record, submitted at the hearing. Juro's

11

does not provide any authority regarding implicit meanings or the selection of a word's "most common meaning."

¶28 As the Department observes, and Juro's witness conceded at the hearing, the submitted dictionary entry for the word "deliver" contains more than one definition. Moreover, Juro's implicitly concedes in its brief on appeal that the word "deliver" encompasses shipping by using the word "[d]eliveries" to describe the transport of packages "shipped via United Parcel Service."

¶29 An appellant bears the burden of establishing error. *Hawkins v. Harney*, 2003 MT 58, ¶ 35, 314 Mont. 384, ¶ 35, 66 P.3d 305, ¶ 35 (citation omitted). Based on the multiple dictionary definitions, Juro's concessions that "deliver" has more than one meaning, and the lack of authority provided on appeal, we conclude Juro's has not met its burden of establishing error based on the "common meaning" of the term "deliver."

¶30 We conclude the Decision's conclusion that the Department's interpretation of the Rule as precluding reimbursement of shipping costs for diapers was reasonable and not plainly inconsistent with the Rule's spirit is correct. Therefore, we hold the District Court did not err in upholding the final administrative decision.

¶31 Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ JOHN WARNER
/S/ JIM REGNIER
/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART