No. 04-579

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 202

MARSHA KIRCHNER,

        Petitioner and Appellant,

   v.

STATE OF MONTANA, DEPARTMENT OF
PUBLIC HEALTH AND HUMAN SERVICES,
DIVISION OF QUALITY ASSURANCE,

        Respondent and Respondent.


APPEAL FROM:    District Court of the First Judicial District,
                     In and for the County of Lewis and Clark, Cause No. DV 2003-482
                     The Honorable Thomas C. Honzel, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

        Christopher Daly, Attorney at Law, Missoula, Montana

        For Respondent:

        Kimberly A. Kradolfer, Special Assistant Attorney General, DPHHS, Helena,
        Montana


                        Submitted on Briefs:  May 31, 2005

                             Decided:  August 16, 2005

Filed:

                                        
                               Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Marsha Kirchner (Kirchner) appeals the First Judicial District Court's decision upholding the Decision of the Board of Public Assistance and the Fair Hearings Decision. We affirm.

**ISSUE**

¶2 The restated issue on appeal is whether the District Court erred in upholding a final administrative decision which concluded that the Montana Department of Public Health and Human Services (DPHHS or Department) was entitled to repayment of $4,593.96 in fees that had been paid to Kirchner by the Montana Medicaid Program (Medicaid).

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3 Kirchner is a licensed professional counselor who has been providing services for Medicaid clients since 1992. After providing such services, Kirchner seeks payment from the Montana Medicaid Program which is administered by the DPHHS. Medicaid providers must follow specific billing procedures when submitting claims to the Department for payment. Kirchner does not dispute that she is required to bill for her services in accordance with the specific billing procedures.

¶4 One element of the billing process requires providers to identify each medical procedure they perform for each patient by assigning a pre-determined "code" number to the procedure. For example, for the type of work Kirchner performs, there is a specific code number for individual therapy and a different code number for group therapy. Prior to July

2

1, 1999, Medicaid providers were required to bill using "local codes." Local codes were billed in 15-minute increments, meaning a provider could bill multiple units to a single patient in a given day depending upon the amount of time spent with the patient.

¶5    On July 1, 1999, new DPHHS rules were implemented. These rules required Medicaid providers seeking payment for services to begin using a national coding system. These national codes describing different kinds of medical procedures were published in a manual entitled Current Procedure Terminology, or CPT. All Medicaid providers were supplied with a Medicaid Provider Handbook that explained how to process a claim. Significantly, the new CPT codes relevant to Kirchner's practice were designated as "per visit" as opposed to per 15-minute intervals, as before. Thus the new codes categorized billing by the specific procedure performed, and *not* the amount of time spent performing it. The Department therefore maintains that under the new codes, only one unit of service could be billed per patient per day, regardless of the amount of time the provider spent with the patient.

¶6    Kirchner asserts that when the system changed, she did not understand how to bill under the CPT codes for sessions that ran more than one hour. She states that she called Consultec (later renamed ACS), the fiscal agent for DPHHS to whom she submitted her claims, and requested assistance. Kirchner maintains that a representative of Consultec instructed her to bill one unit for an hour-long session, and bill a second unit if the session lasted more than an hour, even if it did not run a full two hours. Subsequently, Kirchner

billed the Medicaid Program in accordance with Consultec's instructions. At times she billed two units of service for the codes in questions, and at other times, as many as four and five units of service per patient per day, based on the amount of time she spent with the patient. In January 2001, Kirchner stopped billing for more than one unit of service per patient per day because she learned that the Department considered such multiple unit billing to be improper.

¶7 During the relevant time period, Kirchner submitted her claims and was paid by DPHHS. DPHHS typically pays claims on an "as submitted" basis and later audits those payments for correctness. *See Juro's United Drug v. Public Health*, 2004 MT 117, ¶ 20, 321 Mont. 167, ¶ 20, 90 P.3d 388, ¶ 20. Subsequently, during the Department's audit of Medicaid provider claims submitted between July 1, 1999, through June 30, 2002, the Department discovered Kirchner's improperly billed claims and notified her that she had erroneously overbilled the Montana Medicaid Program in the amount of $4,593.96.

¶8 Kirchner did not contest the Department's calculations, but rather disputed the DPHHS's position that her billing was wrong. She requested an Administrative Review which was held by telephone in mid-January 2003. The subsequent Administrative Determination upheld the DPHHS's demand for repayment. In accordance with applicable regulations, Kirchner then sought a Fair Hearing which was held on March 18, 2003. At the conclusion of the hearing and after reviewing the parties' proposed Findings of Fact and Conclusions of Law, the Hearings Officer upheld the Department's determination that

4

Kirchner had overbilled the Medicaid Program. In his Decision, the Hearings Officer failed to make certain factual findings requested by Kirchner, leading Kirchner to request review with the Montana Board of Public Assistance (BPA). In August 2003, the BPA adopted the Hearings Officer's May 5, 2003, Decision. Kirchner then sought review of the decision by the District Court. On May 5, 2004, the District Court affirmed the BPA's Decision. Kirchner filed a timely notice of appeal.

## STANDARD OF REVIEW

¶9 The relevant portion of the applicable standard of review is set forth in the Montana Administrative Procedure Act (MAPA) at § 2-4-704, MCA:

> (2) The court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because:
>
> (a) the administrative findings, inferences, conclusions, or decisions are:
> . . .
> (iv) affected by other error of law;
> (v) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record;
> . . .
> (b) findings of fact, upon issues essential to the decision, were not made although requested.

¶10 This Court will review a state agency's conclusions of law to determine whether the agency's interpretation of law is correct. *Seven Up Pete Venture v. Mont.*, 2005 MT 146, ¶ 58, ___ Mont. ___, ¶ 58, ___ P.3d ___, ¶ 58 (internal citations omitted). Likewise, we

5

review a district court's conclusions of law for correctness. *State v. Tichenor*, 2002 MT 311, ¶ 18, 313 Mont. 95, ¶ 18, 60 P.3d 454, ¶ 18.

¶11 Kirchner argues, pursuant to § 2-4-704(2)(b), MCA, that the District Court erred by not overturning the Hearings Officer's Decision for his failure to adopt certain of Kirchner's proposed findings. Additionally, she maintains that the District Court misapplied the holding in *State v. Vainio*, 2001 MT 220, 306 Mont. 439, 35 P.3d 948. Lastly, Kirchner avers that the District Court erred in upholding the Hearings Officer's admission of Consultec's telephone logs.

## DISCUSSION

¶12 The crux of Kirchner's argument is that she should not be responsible for the overbilling because: 1) there was nothing in writing from the DPHHS or Consultec notifying her that billing more than one hour under the codes was not permitted; and 2) the Department should be estopped from seeking repayment because an employee of Consultec orally advised her she could bill more than one hour per patient per day and she received a letter from Randy Poulsen, Chief of the Department's Mental Health Services Bureau, stating that nothing expressly prohibited a therapist from spending more than one hour with a patient under the CPT codes.

¶13 At her Fair Hearing, Kirchner cross-examined three of the State's witnesses: one DPHHS employee and two Consultec employees. She elicited testimony that during the period in question, there was nothing in writing from the Department or its agent, Consultec,

to state that billing more than one hour under these codes was impermissible. As a result of this testimony, Kirchner proposed the following Findings of Fact, among others, to the Hearings Officer:

5. On cross-examination, Ms. Higgins [Compliance Specialist for DPHHS], testified that for the period in question from July, 1999 through January, 2001, there was nothing in writing from the State or its agent, Consultec, to state that billing more than one hour under these codes was impermissible.

7. On cross-examination, Ms. Brandt [Registered Health Information Administrator for ACS] testified that for the period in question July, 1999 through January, 2001, there was nothing in writing from the State or its agent, Consultec, to state that billing more than one hour under these codes was impermissible.

12. On cross-examination, Ms. Hance [Deputy Accounts Manager for Consultec/ACS] testified that for the period in question July, 1999 through January, 2001, there was nothing in writing from the State or its agent, Consultec, to state that billing more than one hour under these circumstances was impermissible.

Kirchner maintains that because there was no evidence in the record to contradict the above-recited testimony of witnesses Higgins, Brandt and Hance, the Hearings Officer should have adopted these findings and failure to do so was reversible error.

The Hearings Officer, however, determined that the more relevant testimony presented by the Department's expert, Ms. Brandt, was the Department's *interpretation* of the relevant CPT codes. Brandt explained that, with the exception of one unrelated code, the relevant codes were "per visit" codes and could only be properly billed for one unit of service per patient per day. In his Decision, the Hearings Officer noted that Brandt's interpretation was

7

supported by an article in the Summer 1992 issue of "CPT Assistant," a guide published by the American Medical Association, that discussed and clarified coding issues and answered provider questions regarding proper use of CPT codes. Observing that Kirchner had provided no expert testimony to refute this interpretation, the Officer concluded that the Department's interpretation was a "reasonable" one. As a result, he sustained the Department's ruling in accordance with *State Personnel v. Investigators*, 2002 MT 46, 308 Mont. 365, 43 P.3d 305. In *State Personnel*, we held that an agency's interpretation of its rule is afforded great weight, and the court should defer to that interpretation unless it is "plainly inconsistent" with the spirit of the rule. The agency's interpretation of the rule will be sustained so long as it lies within the range of reasonable interpretation permitted by the wording.

¶19     Kirchner argued to the District Court that the Department should have put its agency interpretation in writing. She relied for this argument upon our decision in *Vainio*. However, *Vainio* is inapposite. At issue in that case were certain informal Medicaid "policies" that the defendant had been criminally convicted of violating. Vainio successfully argued on appeal that a criminal conviction could not be based upon the violation of these "policies" because they had never been formally promulgated pursuant to MAPA. Here, by contrast, the national DPHHS billing rules under which Kirchner was assessed for reimbursement have not been challenged. Thus, the rules themselves are presumptively valid. The question Kirchner presents, and which the District Court rejected, is whether the Department's

8

*interpretation* of the CPT codes should have been in writing and adopted pursuant to MAPA. This issue was not before us in *Vainio.*

¶20     As to Kirchner's assertion that a Departmental *interpretation* must be in writing, the State notes that under § 2-4-102(13)(b), MCA, an agency *may* adopt an interpretive rule under MAPA but is not required to do so.  Additionally, the State counters that the absence of written instructions expressly informing Kirchner that she could not be reimbursed for billing more than one unit of service under a particular code for a given client on a given day is irrelevant.  This is so, the State argues, because the Department is statutorily entitled to recover overpayments "regardless of whether the incorrect payment was the result of Department or provider error or other cause."   Section 53-6-111(2)(a)(i), MCA; Rule 37.85.406(10)(a), ARM.

¶21     Section 53-6-111(2)(a)(i), MCA, unequivocally states:

> (2)  (a) The department is entitled to collect from a provider, and a provider is liable to the department for:
> (i)  the amount of a payment under this part to which the provider was not entitled, regardless of whether the incorrect payment was the result of department or provider error or other cause; . . .

¶22     Montana Administrative Rule 37.85.406(10)(a) further provides:

> The department is entitled to recover . . . any payment to which the provider was not entitled, regardless of whether the payment was the result of department or provider error, or other cause, and without proving that the provider submitted an improper or erroneous claim knowingly, intentionally, or with intent to defraud.

9

*See also Juro's United Drug*, ¶ 21, quoting verbatim § 53-6-111(2)(a)(i), MCA, and holding that Juro's must reimburse the Department for overpaid "delivery fees."

¶23    In *Juro's*, as in the case at bar, after paying Juro's submitted claims, the Department subsequently conducted an audit and determined that Juro's had improperly billed the Program and was erroneously paid under the relevant Medicaid code. The DPHHS sought repayment of approximately $10,000.00. The Department's conclusion was based on regulatory language the meaning of which was a matter of dispute between Juro's and the Department. The District Court affirmed the decision of the Hearings Officer and the BPA, concluding that the Department's interpretation of the rule was "reasonable and not inconsistent with" the applicable rule. We affirmed the District Court.

¶24    Kirchner argues that *Juro's* is inapplicable because it stands for the proposition that an individual cannot profit from a payment to which he or she is not entitled. She maintains that the State has not argued that she did not do the work for which she was paid, but only that she billed incorrectly for the work performed; therefore she is "entitled" to payment.

¶25    Section 53-6-111(2)(a)(i), MCA, Rule 37.85.406(10)(a), ARM, and *Juro's* all expressly indicate that the Department may seek reimbursement from a provider who "was not entitled" to a Medicaid payment. Therefore, Kirchner's argument against the applicability of *Juro's* likewise would apply to the applicability of the statute and the regulation. "Entitled" simply means "to furnish with a right or claim to." American Heritage Dictionary, Fourth Edition, 2000. Under the Department's interpretation of its rule,

10

providers are authorized to bill the Medicaid Program under the medical codes relevant to Kirchner's claim for only one unit of service per patient per day. Therefore, such providers are "entitled" to payment from the DPHHS for only one unit of service per patient per day. Kirchner accurately states that there is nothing in writing to prohibit her from spending more than one hour with a patient per day. She is, of course, free to do so. However, under the Department's interpretation of its rules, she may be paid by the Medicaid program for only the amount of time considered to be "one unit" of service per patient per day. As stated above, the District Court concluded that the DPHHS's interpretation of the CPT codes was "reasonable and not inconsistent."

¶26     This Court has long held that an "agency's interpretation of its rule is afforded great weight, and the court should defer to that interpretation unless it is 'plainly inconsistent' with the spirit of the rule. The agency's interpretation of the rule will be sustained so long as it lies within the range of reasonable interpretation permitted by the wording." *Easy v. Dept. of Natural Res. & Conserv.* (1988), 231 Mont. 306, 309, 752 P.2d 746, 748 (internal citations omitted). In the case at bar, both the Hearings Officer and the District Court concluded that the Department's interpretation of its rule was "reasonable and not inconsistent with" the applicable rule. Kirchner has presented nothing to convince us that a contrary conclusion should be reached. Because the Department's interpretation of the CPT codes was reasonable, Kirchner is not entitled to payment for the overbilled services under § 53-6-

11

111(2)(a)(i), MCA, and Rule 37.85.406(10)(a), ARM, and is liable to the Department for reimbursement of the overpayment.

¶27 Under these circumstances we conclude that the factual findings proposed by Kirchner were irrelevant in light of the applicable law, and the Hearings Officer's failure to adopt them was not error. From the record provided us, we further conclude that the factual findings that were adopted by the Hearings Officer were adequately supported by the evidence, and were not clearly erroneous.

¶28 Finally, Kirchner maintains in the alternative that the Department should be estopped from seeking reimbursement from her because she justifiably relied upon an oral instruction from a Consultec employee that she could bill more than one unit per patient per day. In this connection, she asserts that the Hearings Officer improperly admitted and considered evidence, and improperly shifted the burden of proof.

¶29 At Kirchner's Fair Hearing, the Hearings Officer analyzed the merits of Kirchner's estoppel claim. In doing so, the Officer admitted over Kirchner's objection the telephone logs of Consultec, which had been offered to refute Kirchner's claim that a Consultec representative had authorized her by phone to bill in the manner she did. Kirchner argues on appeal that the admission of the telephone logs was error, as was the Hearings Officer's and the ensuing District Court's conclusion that the doctrine of equitable estoppel did not apply. We decline to disturb these conclusions because ultimately they were unnecessary to the District Court's determination.

12

¶30    At the core of Kirchner's estoppel claim is her contention that the Department's Consultec agent gave her false information, upon which she relied to her detriment. However, the fact remains that § 53-6-111(2)(a)(i), MCA, and Rule 37.85.406(10)(a), ARM, expressly authorize the Department to collect from a provider an unentitled payment, *regardless of whether the incorrect payment was the result of department or provider error, or other cause*. See ¶¶ 21-22 above. Even if Kirchner could establish that the information given to her was incorrect, this amounts at best to Department error, and Department error is not a bar to a claim for reimbursement. Because Kirchner would be unable to avoid either the plain meaning or the consequences of the statute and administrative rule even if she succeeded in proving she was given bad information, it was unnecessary for the Hearings Officer or the court to reach the merits of the estoppel argument, and it is likewise unnecessary for us to review those merits here.

## CONCLUSION

¶31    For the foregoing reasons, we affirm the District Court.

/S/ PATRICIA O. COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ JIM RICE
/S/ BRIAN MORRIS

13